**Donald L. KRSTICH, Plaintiff,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant.**

**No. 89–CV–2091.**

United States District Court,
N.D. Ohio, E.D.

June 10, 1991.

Paul P. Perantinides, James J. Gutbrod, Nukes & Perantinides, Akron, Ohio, for plaintiff.

Terrence J. Kenneally, Meyers, Hentemann, Schneider & Rea, Elyria, Ohio, for defendant.

## ORDER

SAM H. BELL, District Judge.

Currently before the court are cross-motions for summary judgment filed by the plaintiff and defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff filed this action seeking a declaratory judgment that, while preferably Ohio law governs the issue of whether an umbrella insurance policy includes underinsured motorist coverage, an application of either Ohio or North Carolina's laws would permit the plaintiff to recover pursuant to the policy. The defendant maintains that North Carolina law applies to the facts of this case and that it absolves the defendant of liability. Therefore, the issues for resolution are the conflict of law question and the extent of an umbrella policy's coverage.

## I. BACKGROUND

The following facts form the basis of this action and have been stipulated to by the parties. The plaintiff is a resident of North Carolina, while the defendant has its principal place of business in San Antonio, Texas. On November 26, 1987, the plaintiff was involved in an automobile accident in Summit County, Ohio. A third party, Melinda Phelps, failed to stop at a stop sign and struck the plaintiff's vehicle. The plaintiff was driving a vehicle that was registered to him and used by him in North Carolina. However, the vehicle was listed on the declaration sheet of a primary insurance policy issued by defendant as being principally garaged in Ohio.

At the time of the accident, the plaintiff was insured by the defendant United Services Automobile Association under two policies. The first policy contains provisions providing uninsured motorist coverage with limits of liability of $100,000 per person and $200,000 per accident. The second policy is a personal umbrella liability policy with limits of liability of $1,000,000. This umbrella policy protects plaintiff from certain liability he may incur resulting from his operation of a motor vehicle, but has no explicit language dealing with underinsured or uninsured motorist claims.

The plaintiff settled with Melinda Phelps for the limit of her liability insurance. Prior to this settlement, the plaintiff received permission from the defendant to enter into the agreement. The plaintiff then made claims on his own insurance coverage pursuant to the underinsured motorist provision of the primary policy and the general provisions of the umbrella policy. The defendant paid the limit of the primary policy but refused to pay anything from the umbrella policy.

On October 30, 1989, the plaintiff filed a complaint seeking declaratory relief in this court. In this complaint, the plaintiff asked the court to declare that underinsured motorists coverage exists under both the primary insurance policy and the umbrella policy. The plaintiff further asked the court to declare that the defendant acted in bad faith in denying coverage under both policies.

On January 11, 1990, the plaintiff filed an amended complaint changing the subject matter of the declaratory relief sought in the original complaint. In the amended complaint, the plaintiff states that the defendant paid the relevant limits under the primary insurance policy. The plaintiff now asks this court to declare that underinsured motorists coverage exists under the umbrella policy issued by the defendant and that the defendant acted in bad faith by denying coverage under this policy. In its answer, the defendant maintains that there is no underinsured motorist coverage under the terms and conditions of the umbrella policy and that there exists no obligation upon the defendant to afford such coverage.

On February 6, 1991, this court issued an order stating that the court would consider the matter submitted for deliberation and decision based upon the parties' cross-motions, briefs, and any reply motions. Both the plaintiff and the defendant filed motions for summary judgment and the plaintiff filed a reply brief. Pursuant to its order and upon agreement of counsel, this court will make a decision as to the merits of each party's claims.

## II. ANALYSIS

In reviewing a motion for summary judgment, a court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) ...

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

.  .  .  .  .

(e) ...
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)." *Matsushita*, 475 U.S. at 586–587, 106 S.Ct. at 1355–1356. (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must

present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2515.

On the other hand, the moving party's burden under Rule 56 is lighter.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.,* 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson, Celotex,* and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact and

tended to emasculate summary judgment as an effective procedural device.

*Street, supra,* at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted).

As both parties have moved for summary judgment, they have an equal burden pursuant to the standards enunciated above. Further, the parties have agreed, and this court has accordingly ordered, that the issues in this case are to be decided wholly on the cross-motions for summary judgment. We will, then, proceed by determining the merits of the action based upon the facts as submitted by and/or stipulated to by the parties.

The parties have presented two issues to the court, *viz.,* the question of whether to apply Ohio or North Carolina[1] law and, having decided that, whether plaintiff may recover from defendant under the umbrella policy. Inasmuch as the court believes that application of Ohio and North Carolina law yields the same result on the issue of plaintiff's coverage under the policy, an analysis of the conflicts of law question may be deemed somewhat unnecessary. Due to a great deal of confusion regarding the conflicts of law issue, we will, however, examine this question so that our ultimate decision may perhaps be better clarified.

With regard to the conflicts of law question, the defendant maintains that North Carolina conflicts of law principles are to be utilized in determining which

---

1. Plaintiff maintains that Ohio law governs the contract issue herein, while defendant argues

that North Carolina law controls.

state's laws to apply because the contract at issue was made in North Carolina. This argument, of course, runs afoul of the well-settled proposition of law that a federal court sitting in diversity must apply the conflict of law rules of the state in which it sits. *See Klaxon v. Stentor*, 313 U.S. 487, 490, 61 S.Ct. 1020, 1020, 85 L.Ed. 1477 (1941); *Colonial Refrigerated Transportation, Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cit.1983); *Detrex Chemical Industries, Inc. v. Employers Insurance of Wassau*, 681 F.Supp. 438, 455 (N.D.Ohio 1987). Thus, this court must apply Ohio conflicts of law principles to determine whether Ohio or North Carolina law governs the issue of insurance coverage herein.

There exist somewhat differing tests for determining the appropriate choice of law depending upon whether the action is brought in tort or in contract. Plaintiff primarily argues that the tort test should apply, but also argues that recovery in his favor will ultimately result even if the contract test applies. With regard to the former test, Ohio law prior to 1971 dictated that the substantive law of the place of injury controlled tort actions under the rule of *lex loci delicti*. In 1971, however, the Ohio Supreme Court began to depart from this somewhat mechanical approach in favor of balancing the state interests involved. *Fox v. Morrison Motor Freight, Inc.*, 25 Ohio St.2d 193, 197–200, 267 N.E.2d 405 (1970). In subsequent decisions, the Ohio Supreme Court has continued to move toward an analytical method with increased emphasis on a case-by-case approach. *Moats v. Metropolitan Bank of Lima*, 40 Ohio St.2d 47, 49, 319 N.E.2d 603 (1974); *Schiltz v. Meyer*, 29 Ohio St.2d 169, 171–72, 280 N.E.2d 925 (1972).

In *Morgan v. Biro Manufacturing Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286 (1984), the Ohio Supreme Court reviewed and clarified its approach to tort conflicts of law questions. The *Morgan* court adopted the methodology stated in the Restatement of the Law of Conflicts as a guideline and announced:

> When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analy-sis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.

*Id.* at 342, 474 N.E.2d 286 (footnotes omitted).

Section 6 of 1 Restatement of the Law 2d, Conflicts of laws 10, provides as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of law to be applied.

Section 6 of 1 Restatement of Law 2d, Conflicts of Laws 10.

With regard to the contracts test, Ohio follows the general principle that "in cases involving a contract, the law of the state where the contract is made governs the interpretation of the contract." *Nationwide Mutual Insurance Co. v. Ferrin*, 21 Ohio St.3d 43, 44, 487 N.E.2d 568 (1986). The court in *Ferrin* expounded upon this doctrine by reemphasizing its view that Section 188 of 1 Restatement of the Law 2d, Conflict of Laws (1971) provides the principles to be followed in ascertaining where a contract is made. Section 188, at 575, provides as follows:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
>
> (2) In the absence of an effective choice of law by the parties (see Section 187), the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting;
>
> (b) the place of negotiations of the contract;
>
> (c) the place of performance;
>
> (d) the location of the subject matter of the contract;
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contracts are to be evaluated according to their relative importance with respect to the particular issue.

*See Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 288, 473 N.E.2d 807 (1984) *cert. denied* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).[2] Thus, under both tests, the principles of § 6 factor into resolution of the choice of law.

Although the present action is brought pursuant to the insurance contract and is seemingly easily classified as a contract action, the plaintiff maintains that the tort test should apply when construing coverage under a contract for an individual insurance policy. The plaintiff cites to two unreported Ohio appellate decisions in support of this argument. The first, *Mayse v. Watson*, 1985 WL 7613, No. E–85–8 (Erie Cty. Sept. 27, 1985) (text in WESTLAW), involved a suit against an uninsured driver and the plaintiff's insurance company. The issue was whether Florida no fault law should apply or whether Ohio law should apply, allowing the plaintiff to recover for pain and suffering. The court noted the difference in the interest analysis approaches between contract and tort claims. It further noted the necessity of classifying an action as one in either tort or contract prior to making the choice of law decision. *Id.* Specifically, the court questioned whether the "recovery of damages due to tortious conduct of a third party is governed by the principles of contract law or principles of tort law." *Id.* In answer to this question, the court in *Mayse* reasoned that

> the insurance contract is a means of indemnifying the insured for his losses. The contract, however, is not intended to establish what type and to what extent damages should be recoverable. The damages available to the injured party must first be determined by the tortfeasor's degree of care owed the injured party, and any associated negligence/fault on the part of the injured party's right to recover and, as such, necessarily influence the insured's measure of damages. Logically, if tort law controls the factors which establish how the injury occurred and who was at fault, then tort law should also control the measure of damages recoverable.

*Id.* (citations omitted). Therefore, the court held that the proper test to apply was the choice of law test for tort actions.

The above case is distinguishable from the case at bar in that in *Mayse* the issue revolved around whether the plaintiff could recover for pain and suffering. In the present case, it is not the nature or the

2. The subject contract did not provide for a choice of law.

measure of damages in question but rather the monetary extent of recovery pursuant to the insurance policy. Another case that the plaintiff relies upon, *Nationwide Ins. Co. v. Fryer*, 1990 WL 131355, No. 89–C–26 (Columbiana Cty. Sept. 5, 1990) (Text in WESTLAW), somewhat narrows the distinction. In *Fryer*, the court relied on the *Mayse* decision to determine whether a policy holder could add together coverage for separate vehicles under a single policy of insurance. *Id.* The plaintiff's husband, an Ohio resident, was killed in a motorcycle accident in Pennsylvania. The tortfeasor's liability insurance carrier offered to pay the plaintiff the limits of coverage. *Id.* The plaintiff then sought to recover from her own carrier pursuant to the underinsured motorists provisions contained in her policy. *Id.* The insurance carrier filed an action seeking declaratory judgment as to its rights and obligations under the policy terms. *Id.* The trial court had held that the issue should be resolved by Ohio's substantive contract law even though the issue stemmed from a tort action. The appellate court reversed, holding that the "principles of tort law govern an action instituted by an insured, against an insurer, for recovery of damages due to the tortious conduct of a third party." *Id.* Specifically, the policy stated that the insurer would pay damages that the insured was legally entitled to recover from the owner or driver of an uninsured vehicle. *Id.* Therefore, the court determined that if it would have applied Pennsylvania's tort law in a suit between the two drivers, it should also apply Pennsylvania tort law in an action between the plaintiff and her own insurance carrier.

■ This court believes that the *Mayse* and *Fryer* decisions, when read together, establish that the Ohio tort choice of law test applies when an insured brings an action against an insurer under an individual insurance policy as a result of the tor-

tious conduct of a third party.[3] In other words, in the case at bar, the Ohio courts would utilize Restatement §§ 145 and 146 to determine whether Ohio law or North Carolina law applies to the substantive contract issue in this case.

■ In applying the tort choice of law test, there is an initial presumption that the law of the place of injury, here in Ohio, controls. Restatement § 146. The court must then determine whether the factors under § 145 establish that another state, here North Carolina, has a more significant relationship to this lawsuit. We do not believe that defendant has sufficiently overcome the burden established under § 146. The factors of § 145 weigh in favor of Ohio as the applicable forum. The first two § 145 factors indisputably favor Ohio, inasmuch as the injury occurred in Ohio as did the conduct causing the injury. Under the third elements, the interest are split among three states: plaintiff is a resident of North Carolina, defendant is incorporated in Texas, and the tortfeasor resides in Ohio. The third factor, in essence, becomes a nonfactor.

With regard to the fourth factor, it appears as though an analysis of the relationship between the parties would mandate an examination of the parties' contractual relations. If an analysis of the § 188 elements were undertaken, it would seem that North Carolina has a greater interest to the transaction herein than does Ohio, although evidence of the place of contracting, negotiations, and performance is scant.

Even assuming that the fourth § 145 factor cuts in favor of North Carolina as the law of the applicable forum, the § 146 presumption cannot be overcome due to the fact that the final § 145 prong, the § 6 factors, fails to endorse North Carolina as the interested state. The first § 6(2)[4] pre-

---

**3.** The conclusions reached in *Mayse* and *Fryer* may seem at first glance to be contrary to the holding of the Ohio Supreme Court in *Ferrin, supra,* 21 Ohio St.3d 43, 487 N.E.2d 568. In that case, the court applied the contract choice of law test to determine which state's law to apply to the issue of an injured insured's coverage under an insurance contract. The insurance

contract in that case, however, was a *commercial* contract rather than an individual insurance policy. *Mayse* and *Fryer* both involved the latter type of contract.

**4.** Section 6(1) is irrelevant to this matter because Ohio has no statutory directive as to choice of law.

cept offers no guidance whatsoever. The "needs of the interstate and international systems" addresses the goal toward a more uniform system of choice of law rules throughout the nation. *See* Comment (d) to § 6. It is doubtful that this court's choice of law decision will have any bearing on this goal.

The second § 6(2) element favors Ohio. With regard to this factor, the Restatement provides as follows:

> Two situations should be distinguished. One is where the state of the forum has no interest in the case apart from the fact that it is the place of the trial of the action. Here the only relevant policies of the state of the forum will be embodied in its rules relating to trial administration.... The second situation is where the state of the forum has an interest in the case apart from the fact that it is the place of trial....

comment (c) to § 6. The "second situation" applies here; Ohio obviously has an interest in this case because the tort and conduct causing the injury occurred here.

The third § 6(2) prong has little bearing upon this case. The only other possibly interested state is Texas, defendant's place of incorporation. Inasmuch as some of the contract negotiations occurred between defendant's Texas office and plaintiff in North Carolina, Texas arguably has some interest in the outcome of this case. In any event, however, neither party argues for application of Texas law, and so § 6(2)(c) becomes irrelevant.

The fourth, fifth, and sixth precepts collapse upon one another, as follows:

> The need for protecting the expectations of the parties gives importance in turn to the value of certainty, predictability and uniformity of result. For unless these values are attained, the expectations of the parties are likely to be disappointed. Protection of the justified expectations of the parties by choice-of-law rules in the field of contracts is supported both by those factors in Subsection (2) of § 6 which are directed to the furtherance of the needs of the parties and by those factors which are directed to implementa-

tion of the basic policy underlying the particular field of law. Protection of the justified expectations of the parties is the basic policy underlying the field of contracts.

Comment (b), § 188. Factor (d) of § 6(2) supports the application of Ohio law, and thus so also do factors (e) and (f) of necessity. Plaintiff's vehicle involved in the accident was principally garaged in Ohio, and thus plaintiff's belief that he would be covered for an accident with an uninsured motorist in Ohio would be reasonable and justified. By the same token, it cannot seriously be argued that defendant, a Texas corporation which issues individual policies to out-of-state residents, could be surprised by a claim by an insured in another state, wherever that state may be.

The last § 6(2) element, ease in the determination and application of the law to be applied, is of little significance. The drafters of the Restatement believed this to be a general, ideal goal toward which to strive, but also cautioned that "[t]his policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." Comment (j) of § 6.

■ The analysis under §§ 145 and 146, therefore, directs that *Ohio* law should apply to the substantive contract issue in this case. Due to the potential treatment of this opinion on appeal, however, we will analyze the issue under North Carolina law also, *i.e.*, as if the contract choice-of-law principles had been applied and pointed to North Carolina as the proper choice. In any event, an analysis under either state's law will, as will be seen, dictate that plaintiff is entitled to recover under the umbrella policy here.

In Ohio, there is a statutory requirement that motor vehicle insurance policies delivered or issued for delivery in Ohio must provide both uninsured and underinsured motorist coverage, as follows:

> (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the

ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.

Ohio Revised Code § 3937.18(A).

With regard to the issue of whether an excess liability umbrella policy such as the one at issue here must offer uninsured/underinsured motorist coverage, the Ohio statute could fairly be read to apply to the umbrella policy in the case at bar. By its own language, the policy at issue here protects the insured against any liability which may be imposed upon him result-

ing from his operation of a motor vehicle.[5] In addition, the relevant case law authority in Ohio supports such an interpretation. *See Duriak v. Globe American Casualty Company,* 28 Ohio St.3d 70, 502 N.E.2d 620 (1986). In that case, as in the case at bar, the plaintiff was insured under two policies, one containing uninsured motorist coverage and the other containing excess liability coverage but no uninsured motorist coverage. The court held that the latter policy was required to comply with O.R.C. § 3937.18 by providing uninsured and underinsured coverage.

> Clearly, under the express terms of R.C. 3937.18, no exception is made with respect to excess insurance coverage. If the legislature desires to exempt excess liability carriers, they are free to do so. In the meantime, however, we are compelled to hold that excess liability insurance must comport with R.C. 3937.18. In this holding we approve of *Cincinnati Ins. Co. v. Siemens* (1984), 16 Ohio App.3d 129, 474 N.E.2d 655.

*Id.,* 28 Ohio St.3d at 72, 502 N.E.2d 620. *See also House v. State Automobile Mutual Insurance Company,* 44 Ohio App.3d 12, 13–14, 540 N.E.2d 738, (Franklin Cty. 1988) (the *Duriak* holding is not *dicta,* but rather controlling law).

■ The law of North Carolina with regard to uninsured and underinsured motorist coverage is somewhat similar to that of Ohio. The North Carolina Safety and Responsibility Act provides that any motor vehicle liability policy shall provide coverage with respect to the subject matter vehicle in the amount of $25,000 per person, per accident. N.C.G.S. § 20–279.21(b)(2). Further, the uninsured motorist coverage subsection provides, in part, as follows:

> No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless

---

5. The umbrella policy "applies to occurrences that are covered by primary insurance." Per-

sonal Umbrella Policy, Part One.

coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of G.S. 20–279.5, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; . . .

N.C.G.S. § 20–279.21(b)(3). By the very language of this subsection, the umbrella policy in the case at bar would be required to provide uninsured coverage under the law. The umbrella policy herein is a "policy of bodily injury liability insurance" which covers "liability arising out of the ownership, maintenance, or use" of a motor vehicle. By operation of § 20–279.21(b)(3), it must, therefore, provide uninsured motorist coverage.

This issue in this case is primarily *under*insured, rather than *un*insured, coverage. Defendant's obligation to provide uninsured coverage under the umbrella policy is, however, relevant to its obligation to provide underinsured coverage under that policy. The underinsured statutory provision provides, in part, as follows:

(b) Such owner's policy of liability insurance:

.    .    .    .    .

(4) Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy. . . .

N.C.G.S. § 20–279.21(b)(4). Under the language of this statute, any policy which provides coverage in excess of the limits prescribed in subsection (b)(2) and which affords uninsured coverage must provide underinsured coverage "in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy." The umbrella policy herein exceeds the limits of subsection (b)(2) and, as previously discussed, contains uninsured coverage as required by subsection (b)(3). Underinsured coverage is, therefore, mandatory in the amount of the liability policy's limit, here $1,000,000, pursuant to subsection (b)(4).

The court notes that, unlike in Ohio, the North Carolina courts are silent on the specific issue of whether an excess liability umbrella policy must provide underinsured motorist coverage. However, we believe that the language of the North Carolina statute is straightforward and unambiguous. Further, our interpretation of the statute is reasonable in light of the North Carolina Supreme Court's mandate that

> [t]he avowed purpose of the Financial Responsibility Act, of which N.C.G.S. § 20–279.21(b)(4) is a part, is to compensate the innocent victims of financially irresponsible motorists. *American Tours, Inc. v. Liberty Mutual Ins. Co.*, 315 N.C. 341, 346, 338 S.E.2d 92, 96 (1986); *e.g., Insurance Co. v. Chantos*, 293 N.C. [431] at 440, 238 S.E.2d [597] at 604 [ (1977) ]. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. *Moore v. Insurance Co.*, 270 N.C. 532, 535, 155 S.E.2d 128, 130–31 (1967).

*Sutton v. Aetna Casualty & Surety Company*, 325 N.C. 259, 265, 382 S.E.2d 759 (1989) (referring specifically to N.C.G.S. § 20–279.21(b)(4)).

Defendant's argument that the granting of excess liability in a policy need not comport with the Safety and Financial Responsibility Act is unavailing. Defendant cites to § 20–279.21(g), which provides as follows:

> (g) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions

of this Article. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

By its own language, this subsection only applies to a *single* policy which grants the coverage required by the act plus additional coverage. In the case at bar, the umbrella policy is separate and distinct from the primary policy and falls within the provisions of subsections (b)(3) and (b)(4). Further, the offering of uninsured and underinsured motorist coverage is clearly not "voluntary," as defendant contends, and can only be excluded if the insured rejects such coverage in writing, § 20–279.21(b)(3) and (4).

One other issue related to the statutes is worthy of consideration. The language of both the Ohio and North Carolina statutes indicates that the provisions therein only apply to policies "delivered or issued for delivery in this state," O.R.C. § 3937.18(A); N.C.G.S. § 20–279.21(b)(3). Initially one may be troubled by the fact that this opinion has held that Ohio law applies to the issue herein even though the plaintiff's umbrella policy was not delivered in Ohio.

This apparent difficulty can be easily resolved, however, for two reasons. First, the umbrella policy can reasonably be said to have been "issued for delivery" in most of the contiguous states. As reflected by the documents in the record, defendant is a large insurance carrier which offers such policies nationwide. In fact, on the umbrella policy order form, defendant implores its customers to "insure your automobile with USAA (except in Georgia and Florida)," indicating that such policies are issued for delivery in the other 48 states.

Second, defendant's position all along has been that Ohio law does not apply to this lawsuit. In fact, defendant does not address the possibility that Ohio law may be invoked, even though plaintiff argues vigorously for the application of Ohio law. Having examined North Carolina as well as Ohio law, we believe that the rights of both plaintiff and defendant have been fully considered in the resolution of this matter.

One final issue must be considered. In his complaint, plaintiff asks for punitive damages based upon the alleged bad faith on the part of defendant. The briefs and supporting exhibits, however, do not reflect any such type of conduct on the part of defendant and this request must, therefore, be denied.

### III.  CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by plaintiff is granted, and the motion for summary judgment filed by defendant is denied. Defendant USAA is thus hereby required to provide a limit of $1,000,000 of underinsured motorist coverage to plaintiff Donald L. Krstich pursuant to the Personal Umbrella Policy.

IT IS SO ORDERED.