JOHN N. PIAZZA, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF EDITH MAY PIAZZA,
PLAINTIFF V. MICHELLE C. LITTLE AND ANNIE LOU PERRY, DEFENDANTS

No. COA97-743

(Filed 17 March 1998)

1. **Insurance § 533 (NCI4th)— automobile insurance— umbrella policy—offer of UIM insurance**

A personal umbrella (excess) policy which provided automobile bodily injury liability coverage up to $1,000,000 but which by its terms excluded uninsured (UM) and underinsured (UIM) motorist coverage was subject to the provisions of N.C.G.S. § 20-279.21(b)(4), and the insurer thus was required to offer UIM coverage in an amount not to exceed $1,000,000 where UIM coverage had not been rejected by the insured on a form issued by the N.C. Rate Bureau. The insurer's attempted unilateral deletion of UM and UIM coverage in the umbrella policy was without effect.

2. **Insurance § 510 (NCI4th)— automobile insurance—UIM coverage—selection/rejection form for underlying policy— ineffective for umbrella policy**

The insured's execution of a selection/rejection form for UIM coverage on the underlying automobile liability policy was ineffective to reject or waive UIM coverage under an umbrella (excess) policy.

Appeal by unnamed defendant, Automobile Insurance Company of Hartford, Connecticut, from order entered 31 March 1997 by Judge William C. Griffin, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 16 February 1998.

John N. Piazza and his wife, Edith May Piazza, were involved in an automobile accident on 7 March 1995 in which Mrs. Piazza was killed and Mr. Piazza was injured. Mr. Piazza ("plaintiff") filed suit on 2 February 1996 in his individual capacity, and as executor of the

PIAZZA v. LITTLE

[129 N.C. App. 77 (1998)]

estate of his deceased wife, against defendants Little and Perry. Little was the driver, and Perry the owner, of the other vehicle involved in the accident. Defendants had minimum liability coverage with Allstate Insurance Company, which tendered the full amount of its policy limits to plaintiff.

On the date in question, plaintiff also had two personal automobile liability insurance policies with the Automobile Insurance Company of Hartford, Connecticut ("Hartford"). Plaintiff elected $250,000 underinsured motorist coverage ("UIM") on the first policy ("underlying policy"), although he could have elected up to $1,000,000 in UIM coverage. After deducting the $25,000 paid by Allstate, Hartford paid $225,000 to plaintiff pursuant to the underlying policy.

Plaintiff also had an excess coverage policy with Hartford, which provided automobile bodily injury liability coverage up to $1,000,000 per occurrence ("umbrella policy"). The declarations page of the umbrella policy contained the following language: "Uninsured/Underinsured Motorists Limit of Liability: NOT APPLICABLE each occurrence." An Amendatory Endorsement to the umbrella policy provided in pertinent part that "[t]he Uninsured or Underinsured Motorists provisions are hereby deleted from the policy." The Amendatory Endorsement excludes "any claim under uninsured or underinsured motorists coverage." Plaintiff did not sign a selection/rejection form waiving UIM coverage under the Hartford umbrella policy. The complaint included a declaratory judgment claim in which plaintiff asked that the Court declare the respective rights of the parties and determine that the umbrella policy issued by Hartford provided UIM coverage. Hartford denied that the umbrella policy provided UIM coverage, and both plaintiff and Hartford moved for summary judgment on that issue. The trial court granted plaintiff's motion for summary judgment, denied Hartford's motion, and Hartford appealed.

*Ward and Smith, P.A., by Shelli Stoker Stillerman and John M. Martin, for plaintiff appellee.*

*Yates, McLamb & Weyher, L.L.P., by R. Scott Brown and Travis K. Morton for unnamed defendant appellant Automobile Insurance Company of Hartford, Connecticut.*

HORTON, Judge.

The issue presented by this appeal is whether an umbrella policy which provides automobile bodily injury liability coverage up to

$1,000,000, but which by its terms excludes uninsured and underinsured motorist coverage, is subject to the provisions of N.C. Gen. Stat. § 20-279.21(b)(4) (1993 and Cum. Supp. 1997) and thus is required to offer UIM coverage.

## I.

At all times relevant to this case, N.C. Gen. Stat. § 20-279.21(b)(4) provided as follows:

(b) [An] owner's policy of liability insurance:

\* \* \* \*

(4) Shall . . . provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section [that is, minimum statutory limits of $25,000/$50,000] and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) as selected by the policy owner. . . .

\* \* \* \*

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. . . .

\* \* \* \*

Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

N.C. Gen. Stat. § 20-279.21(b)(4) is a part of the North Carolina Financial Responsibility Act ("the Act"), a remedial statute designed to protect "innocent victims who may be injured by financially irre-

sponsible motorists." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224, 376 S.E.2d 761, 763 (1989). The purpose of the Act is "best served when the statute is interpreted to provide the innocent victim with the fullest possible protection." *Id.* The provisions of the Act are deemed to be written into every automobile liability policy "as a matter of law, and, when the terms of [a] policy conflict with the statute, the provisions of the statute will prevail." *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977).

As interpreted by our appellate decisions, the Act provides a three-part test to determine whether UIM must be provided in an automobile bodily injury liability policy, including:

(1) policy limits must exceed the statutory minimum limits set out in N.C. Gen. Stat. § 20-279.21(b)(2); *Hollar v. Hawkins*, 119 N.C. App. 795, 797, 460 S.E.2d 337, 338 (1995);

(2) the policy must provide uninsured motorist coverage; N.C. Gen. Stat. § 20-279.21(b)(3); *Krstich v. United Services Auto. Ass'n*, 776 F. Supp. 1225, 1234 (N.D. Ohio 1991) (applying North Carolina law); and

(3) the policyholder must not have rejected UIM coverage on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance; N.C. Gen. Stat. § 20-279.21(b)(4); *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991).

When all three conditions are met, an automobile bodily injury liability policy must provide UIM coverage. *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 263-64, 382 S.E.2d 759, 762, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). The same reasoning applies to policies which provide excess, or umbrella, liability coverage. *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 461 S.E.2d 317, *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995). An umbrella policy provides protection, at a relatively low premium, against the possibility of a catastrophic verdict. Umbrella coverage begins where that of underlying liability policies end. *Isenhour*, 341 N.C. at 603, 461 S.E.2d at 321.

Our Supreme Court framed the issue in *Isenhour* as follows: "[W]hether a multiple-coverage fleet insurance policy which includes umbrella coverage must offer UIM coverage equal to the liability limits under its umbrella coverage section." *Id.* at 603, 461 S.E.2d at 320. After discussing the nature and purpose of umbrella coverage, the

manifest purpose of the Financial Responsibility Act, and the provisions of N.C. Gen. Stat. § 20-279.21(b)(4), the Supreme Court concluded that, since the umbrella portion of the fleet policy issued by defendant insurer provided automobile bodily injury liability coverage in the amount of $2,000,000, and since the insured had not rejected UIM coverage in writing or selected a different limit, the insurer was required to offer its insured $2,000,000 in UIM coverage. *Isenhour*, 341 N.C. at 606, 461 S.E.2d at 322. *See, in accord,* the decision of this Court in *Martin v. Continental Ins. Co.*, 123 N.C. App. 650, 474 S.E.2d 146 (1996).

Further, many of our sister states have statutes which require that automobile bodily injury liability policies include UM/UIM coverage limits equal to the limits of the liability policy. The courts of those states have held that those statutory requirements also apply to excess, or umbrella, policies. *See* the cases cited in *Isenhour,* 341 N.C. at 604, 461 S.E.2d at 321.

Hartford contends we should distinguish the present situation from that in *Isenhour*, since the umbrella coverage in *Isenhour* was provided under one section of a multiple coverage fleet policy which provided automobile, fire, and umbrella liability coverage. Hartford agrees that the decision of the Supreme Court in *Isenhour* was logical "since the umbrella policy in that case was merely a part of a large motor vehicle policy which was required to comply with the terms of G.S. § 20-279.21." The Preamble to the fleet policy in question in *Isenhour,* however, contained the following language: "This entire document constitutes a multiple coverage insurance policy. . . . *Each Coverage Part so constituted becomes a separate contract of insurance.*" (Emphasis added). We find no rationale for distinguishing the *Isenhour* situation in which separate contracts of insurance were included in one document, from the situation in this case, in which the contracts of insurance were separate documents. The reasoning and rationale of *Isenhour* thus apply to the present case.

## II.

[1] The Hartford umbrella policy in question provides coverage to John Piazza, as the "named insured," for, among other things, liability from injury or death arising from an automobile accident to a maximum of $1,000,000 per occurrence. The umbrella policy is thus a policy of "bodily injury liability insurance," and must provide uninsured motorist coverage pursuant to the provisions of N.C. Gen. Stat. § 20-279.21(b)(3). *Krstich,* 776 F. Supp. at 1234. Since the limits of the

umbrella policy exceed the minimum statutory limits required by the Financial Responsibility Act, and since the umbrella policy must provide uninsured motorist coverage, Hartford was obligated to offer plaintiff underinsured motorist coverage in an amount not to exceed $1,000,000. N.C. Gen. Stat. § 20-279.21(b)(4).

Hartford contends, however, that UIM coverage was not available under its umbrella policy, because the express terms of the policy excluded such coverage and plaintiff had already selected UIM coverage in less than the maximum amount on the underlying policy issued by Hartford. We disagree.

In situations where underinsured motorist coverage must be offered, N.C. Gen. Stat. § 20-279.21(b)(4) provides in pertinent part that

[r]ejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau *shall* be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

*Id.* (emphasis added).

We have previously held that the word "shall" as used in Chapter 20 of our General Statutes is mandatory and not merely directory. *Hendrickson v. Lee*, 119 N.C. App. 444, 454, 459 S.E.2d 275, 281 (1995). Thus, at all times pertinent to this case, only one form fulfilled the statutory directive set out above, and the parties stipulated that plaintiff-insured did not ever execute a selection/rejection form with regard to the umbrella policy.

Nor is the attempted unilateral deletion by Hartford of UM/UIM coverage in the umbrella policy of any effect. *Martin*, 123 N.C. App. 650, 474 S.E.2d 146. The terms of UIM coverage are not controlled either by the parties or their insurance contract, as the provisions of the Financial Responsibility Act are mandatory and must be followed. *Hendrickson*, 119 N.C. App. at 454, 459 S.E.2d at 281.

Finally, defendant contends with respect to this question that the umbrella policy issued to plaintiff is not within the jurisdiction of the North Carolina Rate Bureau, and that it is not necessary to use a form issued by that Bureau to reject UIM coverage. N.C. Gen. Stat. § 58-36-1 (Cum. Supp. 1997), which creates the North Carolina Rate Bureau, provides in part that:

(3) The Bureau shall have the duty and responsibility of promulgating and proposing rates for . . . insurance against theft of or physical damage to private passenger (nonfleet) motor vehicles; for liability insurance for such motor vehicles . . . uninsured motorists coverage and other insurance coverages written in connection with the sale of such liability insurance . . . .

In this case, it is not disputed that plaintiff's umbrella policy provided liability coverage for his private passenger motor vehicles, and was thus clearly within the jurisdiction of the Rate Bureau. We also note that other decisions of this Court have extended the requirement to fleet policies that selection/rejection of UIM coverage be only on a form issued by the Rate Bureau. *See, for example, Martin,* 123 N.C. App. at 652, 474 S.E.2d at 147.

[2] It is stipulated that plaintiff never rejected or limited UM/UIM coverage in the umbrella policy on a form issued by the Rate Bureau. Hartford contends, however, that plaintiff executed a selection/rejection form with regard to the underlying liability policy issued to him by Hartford and selected UIM coverage in less than the maximum UIM coverage offered to him. Execution of the selection/rejection form on the underlying policy would be effective as to the umbrella policy. In *Isenhour,* the Supreme Court held that the umbrella portion of the insurance policy in question provided UIM coverage because "there is no evidence in the record that [plaintiff] either rejected in writing . . . UIM coverage *for the umbrella section of the policy* or selected a different limit." *Isenhour,* 341 N.C. at 606, 461 S.E.2d at 322 (emphasis added) (footnote omitted). We hold that plaintiff's execution of a selection/rejection form in connection with the underlying policy neither rejected nor waived UIM coverage in the umbrella policy.

Hartford was required to offer plaintiff UIM coverage under his umbrella policy in the amount of $1,000,000, the highest limit of automobile bodily injury liability coverage for any one vehicle in the policy. The judgment of the trial court granting summary judgment to plaintiff is

Affirmed.

Chief Judge ARNOLD and Judge EAGLES concur.