AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, PLAINTIFF V.
NORMA L. HAGLER AND HOWARD HAGLER, DEFENDANTS

No. COA98-505

(Filed 2 February 1999)

### Insurance— UIM coverage—umbrella policy—exclusion

The trial court correctly granted summary judgment for plaintiff in a declaratory judgment action to determine obligations under a comprehensive insurance policy which included a personal auto policy with a personal catastrophe liability endorsement; the endorsement provided additional liability coverage in excess of the liability limits provided in the personal auto policy but did not apply to damages arising out of personal injury to the insured or a member of the insured's household; defendant Mr. Hagler executed a selection-rejection form choosing a combined UM-UIM coverage at limits of $100,000/$300,000; the Haglers were involved in a single vehicle accident in which Mrs. Hagler was injured; plaintiff paid its liability limits of $100,000 under the personal auto policy; and defendants contended that Mrs. Hagler was entitled to UIM coverage under the endorsement of the comprehensive policy, arguing that execution of the selection/rejection form as to the underlying policy would not be effective as to the coverage provided under the endorsement. The excess coverage in this case is provided under an endorsement to the Personal Auto Policy and is merely one of a number of endorsements attached to the policy; it is not a separate policy and plaintiff was not required to have the Haglers execute another selection/rejection form in connection with the coverage provided under the endorsement.

Appeal by defendants from judgment entered 13 March 1998 by Judge Russell G. Walker, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 7 January 1999.

## AMERICAN MFRS. MUT. INS. CO. v. HAGLER

[132 N.C. App. 204 (1999)]

On 25 July 1997, American Manufacturers Mutual Insurance Company (plaintiff) filed this declaratory judgment action against defendants Norma L. Hagler and Howard Hagler (the Haglers) to seek a determination of its obligations to the Haglers under a comprehensive policy of insurance which provided coverage to the Haglers for the period from 17 March 1995 through 17 March 1996. Included within the comprehensive policy were a Personal Auto Policy, Personal Catastrophe Liability Endorsement—North Carolina (Endorsement), and Homeowner's Policy. The Personal Auto Policy had liability limits of $100,000 per person and $300,000 per occurrence. The Endorsement provided additional automobile liability coverage in the amount of $1,000,000 in excess of the liability limits provided in the Personal Auto Policy but did not apply, among other things, to "any damages arising out of personal injury to [insured] or a member of [the insured's] household" and "any amounts payable under any Uninsured Motorists [hereinafter UM] or Underinsured Motorists Coverage [hereinafter UIM]."

When Mr. Hagler applied for insurance coverage, he executed a Selection/Rejection Form (the Form) identical (except for cosmetic differences) to the form issued by the North Carolina Rate Bureau and approved by the Commissioner of Insurance. The Form stated that "UM and UM/UIM bodily limits up to $1,000,000 per person and $1,000,000 per accident, are available." The Form also provided that "my selection or rejection of coverage below is valid and binding on all insureds and vehicles under the policy unless a named insured makes a written request to the company to exercise a different option." Mr. Hagler chose Combined UM/UIM coverage at limits of $100,000/$300,000 for bodily injury and $100,000 for property damage. There is no evidence in the record that Mrs. Hagler made any such written request to exercise a different option.

On 12 October 1995, the Haglers were involved in a single vehicle accident. Mr. Hagler was driving a rented vehicle along Interstate 675 in Ohio at the time of the accident and Mrs. Hagler was a passenger. Mrs. Hagler was thrown from the vehicle and severely injured. Plaintiff paid its liability limits of $100,000 under the Personal Auto Policy to Mrs. Hagler. Mrs. Hagler contended that she was also entitled to UIM coverage under the Endorsement of the comprehensive policy issued by plaintiff. Plaintiff and the Haglers filed motions for summary judgment. The trial court granted summary judgment for plaintiff and denied summary judgment for the Haglers. The Haglers appealed.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for plaintiff appellee.*

*Pinto Coates Kyre & Brown, P.L.L.C., by Richard L. Pinto and Martha P. Brown, for defendant appellants.*

HORTON, Judge.

On appeal, the Haglers argue that the exclusion in the Endorsement is void because it is in conflict with the statutes governing motor vehicle liability insurance. They contend that N.C. Gen. Stat. § 20-279.21(b)(3) and (b)(4) requires that, if a policy of insurance (1) offers liability coverage in excess of the minimum limits required by the Act, and (2) contains UM coverage, then the policy must also provide UIM coverage. N.C. Gen. Stat. § 20-279.21(b)(3) and (4) (Cum. Supp. 1997). According to the Haglers, the Endorsement included in their comprehensive insurance policy meets the above criteria, is akin to an "umbrella" policy, and must therefore provide UIM coverage to the Haglers. Furthermore, the Haglers argue that they never selected or rejected UIM coverage under the Endorsement; therefore, they have UIM coverage equal to the amount liability coverage under the Endorsement.

The question before us is whether the Endorsement described above is a *separate* "owner's policy of liability insurance," or merely a part of the comprehensive policy issued to the Haglers. We hold that the Endorsement in question was merely a part of a larger comprehensive policy, that the Form executed by Mr. Hagler was sufficient to reject UIM coverage in excess of $100,000 per person per occurrence, and that the trial court properly entered summary judgment for plaintiff.

## I. Underinsured Motorist Coverage Generally

The North Carolina Financial Responsibility Act (the Act) requires that an "owner's policy of liability insurance" include a description of all vehicles covered by the policy, and provide minimum liability coverage of $25,000/$50,000 for personal injury or death, and $15,000 for property damage. N.C. Gen. Stat. § 20-279.21(b)(1) & (2). The Act further requires that all such liability policies provide protection from uninsured drivers. N.C. Gen. Stat. § 20-279.21(b)(3). If the insurance policy in question offers liability coverage in excess of the minimum limits set forth above and includes UM coverage, then the policy must also provide UIM cover-

age in an amount not less than the minimum liability limits and not more than $1,000,000, as selected by the policy owners. N.C. Gen. Stat. § 20-279.21(b)(4).

With regards to selection or rejection of UIM coverage, the Act provides:

> If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. Once the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.
>
> Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

N.C. Gen. Stat. § 20-279.21(b)(4).

## II. UIM Coverage in Separate, or Umbrella, Policies

In *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 461 S.E.2d 317, *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995), our Supreme Court framed an issue of first impression as follows: "[W]hether a multiple-coverage fleet insurance policy which includes umbrella coverage must offer UIM coverage equal to the liability limits under its umbrella coverage section." *Id.* at 603, 461 S.E.2d at 320. After analyzing the purposes of "umbrella" coverage and the North Carolina Financial Responsibility Act, as well as the applicable statutory provisions, our Supreme Court held that the insurer was required to offer UIM coverage to its policy owner in the umbrella section of the fleet policy. In the *Isenhour* case there was no evidence that the insured had rejected either UM or UIM coverage in writing or selected a different limit.

In *Piazza v. Little*, 129 N.C. App. 77, 497 S.E.2d 429, *disc. review allowed*, 348 N.C. 500, 510 S.E.2d 653 (1998), this Court held in accordance with the reasoning of *Isenhour* that UM and UIM coverage would be available to an insured under the provisions of a *separate* umbrella policy. In *Piazza*, we noted that, although the umbrella coverage in *Isenhour* was provided under one section of a multiple coverage fleet policy, the preamble to the *Isenhour* policy provided that: " '[t]his entire document constitutes a multiple coverage insurance policy. . . . *Each Coverage Part so constituted becomes a separate contract of insurance.*' (Emphasis added)." *Piazza*, 129 N.C. App. at 81, 497 S.E.2d at 431.

We also note that the *Isenhour* Court relied heavily on the decision of the United States District Court for the Northern District of Ohio, in *Krstich v. United Services Auto Ass'n*, 776 F. Supp. 1225 (N.D. Ohio 1991). In *Krstich*, the "umbrella" coverage at issue was provided by a *separate* insurance policy. Applying North Carolina law, the *Krstich* Court concluded that an excess liability umbrella policy must provide UIM coverage. *Id.* at 1234.

### III. Selection of UIM Coverage

In this case, there is no dispute that Mr. Hagler executed the Selection/Rejection form for UIM and UM coverage and chose limits of $100,000/$300,000 for bodily injury. The Haglers argue, however, that execution of the Selection/Rejection form as to the underlying policy of automobile insurance would not be effective as to the coverage provided under the Endorsement. In *Piazza*, we held that "[the policy owner's] execution of a selection/rejection form in connection with the underlying policy neither rejected nor waived UIM coverage in the umbrella policy." *Piazza*, 129 N.C. App. at 83, 497 S.E.2d at 433. The vital distinction between *Isenhour, Krstich, Piazza,* and the case before us is that these cited cases involved two separate policies of insurance, one of which provided "umbrella" coverage. In this case, however, the excess coverage in question is provided under an Endorsement to the Personal Auto Policy issued to the Haglers. It is entitled "Personal Catastrophe Liability Endorsement—North Carolina," and is merely one of a number of endorsements attached to the policy. It is not a separate policy, and therefore plaintiff was not required to have the Haglers execute another Selection/Rejection Form in connection with the coverage provided under the Endorsement. Furthermore, the Endorsement also clearly excluded any damages which arose out of personal injuries to the insured or a

member of the insured's household. The Haglers do not contend that Mrs. Hagler was not a member of Mr. Hagler's household.

The Haglers selected UM and UIM coverages in the amount of $100,000 per person and $300,000 per occurrence, and plaintiff has paid the sum of $100,000 to Ms. Hagler. No further coverage was available to Ms. Hagler under the policy issued by plaintiff, and summary judgment was properly entered for plaintiff by the trial court.

Affirmed.

Judges WYNN and EDMUNDS concur.