DAVID L. HENDRICKSON, Plaintiff v. JAMES L. LEE, NATIONWIDE MUTUAL INSURANCE COMPANY, C/S SOVRAN CREDIT CORPORATION, PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY and NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Defendants

No. 9310SC651

(Filed 18 July 1995)

### 1. Insurance § 530 (NCI4th)— underinsured coverage— waiver of policy limit coverage—use of unapproved form

Summary judgment was properly granted for plaintiff in a declaratory judgment action arising from an automobile accident to determine whether a policy issued by Pennsylvania Manufacturers Association Insurance Company (PMA) provided underinsured motorist coverage where the insurance company argued that the court erred in not finding that its insured had previously rejected UIM coverage equal to the liability limits ($1,000,000) and instead selected UIM coverage in the amount of $60,000. Where liability insurance is in excess of the statutory minimum (as here), UIM coverage must be in an amount equal to the policy limits for bodily injury liability specified in the policy absent rejection thereof in accordance with the N.C.G.S. § 20-279.21(b)(4). At the time of plaintiff's accident, rejection of UIM coverage was required to be in writing on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance. Although PMA contends that the form executed by the insured adequately expressed the intention to reject liability limits UIM coverage, that document differs from the Rate Bureau directive in several respects. Moreover, the language of the executed form is ambiguous and thus must be construed against the insurer and in favor of coverage. Finally, PMA contends that uncontroverted evidence, including an affidavit and the premiums accepted, establish that UIM coverage equal to the policy limits be rejected; however, the language of the statute is mandatory and, as of the date of the accident, only a single form complied with statutory directives.

**Am Jur 2d, Automobile Insurance § 322.**

### 2. Insurance § 527 (NCI4th)— underinsured coverage— wavier of policy limit coverage—approval of form by Rate Bureau

The trial court did not err in a declaratory judgment action arising from an automobile accident by granting summary judg-

ment for plaintiff where defendant insurance company contended that the insured had rejected policy limit UIM coverage on a form other than the form promulgated by the Rate Bureau. Although defendant contended that the failure to utilize a rejection form identical to that promulgated by the Rate Bureau did not invalidate the rejection because the policy did not fall within the jurisdiction of the Rate Bureau in that this was a fleet vehicle policy and the responsibility of the Rate Bureau extends solely to private passenger motor vehicles, the version of N.C.G.S. § 20-279.21(b)(4) in effect at the time of the accident clearly and unambiguously mandated that any rejection of UIM coverage shall be accomplished by use of a form promulgated by the Rate Bureau and approved by the Commissioner of Insurance. That statute appears merely to have been concerned with avoiding confusion and ambiguity and did not effectively confer additional jurisdictional authority on the Rate Bureau. Although defendant contends that a recent amendment expresses the Legislature's intent that N.C.G.S. § 20-279.21(b)(4) does not grant jurisdiction to the Rate Bureau beyond that found in N.C.G.S. § 58-36-1, amendments to statutes are not necessarily clarifications of legislative intent absent express mandate, and the General Assembly here explicitly provided that the 1991 amendments do not affect claims arising prior to or litigation pending on the effective date of the amendments. Plaintiff's claims arose prior to the effective date.

**Am Jur 2d, Automobile Insurance § 322.**

**3. Insurance § 530 (NC 4th)— underinsured coverage— waiver of policy limit coverage—use of unapproved form— not substantial compliance**

The trial court did not err in a declaratory judgment action arising from an automobile accident by granting summary judgment for plaintiff where defendant insurance company contended that a document executed by the insured waiving policy limit UIM coverage substantially complied with the mandate of N.C.G.S. § 20-279.21(b)(4) and fully satisfied its underlying objectives. However, the primary purpose of the Financial Responsibility Act is to assure compensation for the innocent victims of uninsured or underinsured drivers, such as plaintiff here, and PMA's proffered resolution does not serve to further the purpose of the statute. Although defendant observes that a letter sent by the Rate Bureau to its member companies said that the form may not

be changed or substantively amended without prior approval, and contends that the changes here were nonsubstantive, the alterations in the insurance company document from that issued by the Rate Bureau constitute substantive amendments of the sort prohibited by the Rate Bureau's letter and it is undisputed that prior approval of the changes was never sought.

**Am Jur 2d, Automobile Insurance § 322.**

Appeal by defendant Pennsylvania Manufacturers Association Insurance Company from summary judgment entered 20 August 1992 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 23 March 1994.

*Edwards & Kirby, by David F. Kirby and Tiana H. Irvin, for plaintiff-appellee.*

*Young, Moore, Henderson & Alvis, P.A., by Ralph W. Meekins and Glenn C. Raynor, for defendant-appellant Pennsylvania Manufacturers Association Insurance Company.*

*Cranfill, Sumner & Hartzog, by Theodore B. Smyth and Kari L. Russwurm, for defendant-appellee North Carolina Farm Bureau Mutual Insurance Company.*

JOHN, Judge.

In this declaratory judgment action, defendant Pennsylvania Manufacturers Association Insurance Company (PMA) appeals the trial court's entry of summary judgment in favor of plaintiff David L. Hendrickson (plaintiff). The court's ruling was based upon its determination that PMA policy number BAP 159000 758451 9 (the PMA policy) provided plaintiff with underinsured motorist (UIM) coverage up to the limits of bodily injury liability coverage established in the policy. PMA argues, however, that the court erred in not finding that its insured, defendant C/S Sovran Credit Corporation (Sovran), had previously rejected UIM coverage equal to the liability limits and instead selected UIM coverage in the amount of $60,000.00. We disagree with PMA's contentions.

Pertinent factual and procedural information is as follows: On 23 October 1990, plaintiff was seriously injured in an automobile collision caused by the failure of defendant James L. Lee (Lee) to stop his vehicle at a stop-light. When the accident occurred, plaintiff was operating a 1985 Plymouth owned by his employer, defendant Sovran.

**HENDRICKSON v. LEE**

[119 N.C. App. 444 (1995)]

This automobile was covered by the PMA policy, a general commercial insurance policy issued to Sovran in January 1990. Lee was insured on the date of the collision by Nationwide Mutual Insurance Company (Nationwide) under a personal automobile liability policy.

Seeking recovery for his injuries (including amputation of one leg), plaintiff filed a negligence action against Lee in Edgecombe County Superior Court on 14 November 1991. Nationwide subsequently accepted liability on Lee's behalf and tendered its limits of $100,000.00 to plaintiff. Plaintiff thereafter notified PMA of his claim for UIM benefits under the PMA policy.

On 19 December 1991, citing PMA's denial of UIM coverage in excess of $60,000.00, plaintiff filed the instant action for declaratory relief against PMA and North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau). In his complaint, plaintiff alleged his damages exceeded the $100,000.00 submitted by Nationwide and requested a declaration that the amount of UIM coverage available to him under the PMA policy was equal to the limits of bodily injury liability coverage established within that policy.

Farm Bureau's answer, filed 11 February 1992, admitted issuance of several policies in effect on the accident date which provided UIM coverage for certain members of plaintiff's family. However, Farm Bureau asked the court to declare that plaintiff was entitled to UIM coverage at limits of $1,000,000.00 under the PMA policy, and further that PMA's UIM coverage be deemed primary to whatever coverage, if any, the court found to be provided by Farm Bureau's various policies.

PMA's answer asserted that Sovran specifically "rejected underinsured motorists coverage for any amounts over $60,000" as reflected on the policy's declarations page and as evidenced by Sovran's April 1989 execution of a standard rejection form (the rejection form). PMA thereafter requested the court's declaration that the policy provided plaintiff no more than $60,000.00 UIM coverage.

On 17 March 1992, plaintiff moved for summary judgment pursuant to N.C.R. Civ. P. 56 (1990) "on the issue of the underinsured motorist coverage afforded by [PMA]." PMA likewise moved for summary judgment on 16 April 1992. After a hearing held 29 April 1992, the court granted plaintiff's motion and denied that of PMA. Included in the court's order was the following language:

HENDRICKSON v. LEE

[119 N.C. App. 444 (1995)]

IT IS THEREFORE ORDERED:

. . . .

3. That PMA motor vehicle policy no. BAP 159000 758451 9 provides underinsured motorist coverage for damages sustained by plaintiff in the motor vehicle wreck of October 23, 1990.

4. That the limits of underinsured motorist coverage in PMA motor vehicle policy no. BAP 159000 758451 9 are equal to the limits of bodily injury liability coverage in that policy.

5. That the limits of underinsured motorist coverage in PMA motor vehicle liability policy no. BAP 159000 758451 9 are One Million Dollars (1,000,000.00).

[1] PMA contends the trial court erred by determining that the policy provided plaintiff with UIM coverage equal to that policy's $1,000,000.00 bodily injury liability limits. Through three interrelated assignments of error, PMA argues Sovran had previously rejected liability limits UIM coverage and selected UIM coverage in the amount of $60,000.00. Limiting our holding to the circumstances of the case *sub judice*, we disagree.

Summary judgment is a procedural device designed to permit penetration of an unfounded claim or defense in advance of trial, allowing for summary disposition in either party's favor when a fatal weakness in the claim or defense is exposed. *See, e.g., Thompson v. Insurance Co.*, 44 N.C. App. 668, 672, 262 S.E.2d 397, 400 (citing *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979)), *disc. review denied*, 300 N.C. 202, 269 S.E.2d 620 (1980). Summary judgment is "an appropriate procedure in a declaratory judgment action," *Montgomery v. Hinton*, 45 N.C. App. 271, 273, 262 S.E.2d 697, 698 (1980) (citations omitted), but is only properly granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *See* Rule 56(c). Accordingly, we must examine the evidence herein to determine whether it reveals a genuine issue of material fact regarding the amount of UIM coverage provided in the policy; if not, the trial court properly granted plaintiff judgment as a matter of law. *See, e.g., Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *disc. review denied*, 276 S.E.2d 283 (1981) (citation omitted).

PMA initially contends plaintiff was not afforded UIM coverage equal to the liability limits contained in his employer's policy because Sovran specifically rejected that amount of coverage in April 1989. PMA also maintains the validity of Sovran's rejection was not affected by use of a form differing from that promulgated in 1986 by the North Carolina Rate Bureau (the Rate Bureau). Because these contentions involve overlapping questions, we will discuss them jointly.

We note at the outset that "[w]hen examining cases to determine whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy." *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991). In the case *sub judice*, the type of coverage at issue is UIM and the governing statute is the version of N.C. Gen. Stat. § 20-279.21(b)(4) in effect at the time of the incidents giving rise to the instant action. *See* N.C. Gen. Stat § 20-279.21(b)(4) (1988).

The Financial Responsibility Act (the Act), which includes G.S. § 20-279.21(b)(4), is a remedial statute which must be liberally construed in order to achieve the "beneficial purpose intended by its enactment." *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (citation omitted), *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). It is well-established that "[t]he purpose of [the Act] . . . is the protection of innocent victims who may be injured by financially irresponsible motorists." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224, 376 S.E.2d 761, 763 (1989) (citation omitted). As our Supreme Court has stated, the Act's purpose is "best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection*" from the negligent acts of an underinsured motorist. *Id.* at 225, 376 S.E.2d at 764 (emphasis added). Further, the provisions of the Act "are 'written' into every automobile liability policy as a matter of law, and, when the terms of [a] policy conflict with the statute, the provisions of the statute will prevail." *Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977) (citations omitted).

G.S. §20-279.21(b)(4) provided as follows at the time of plaintiff's accident:

(b) Such owner's policy of liability insurance:

. . . .

(4) *Shall . . . provide underinsured motorist coverage,* to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) [i.e, $25,000.00] of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, *in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy.*

. . . .

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage.

. . . Rejection of this coverage for policies issued after October 1, 1986, *shall* be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

(Emphasis added).

Our Supreme Court has held that where (as here) liability insurance is in excess of the statutory minimum, "the UIM coverage must be in an amount equal to the policy limits for bodily injury liability specified in the policy" absent rejection thereof in accordance with the statute. *Smith,* 328 N.C. at 147, 400 S.E.2d at 50. Thus, although an insured is not legally obligated to contract for UIM coverage in *any* amount, *see, e.g., Sutton,* 325 N.C. at 268, 382 S.E.2d at 765, UIM coverage equal to a policy's liability limits will be assumed *unless* the insured validly rejects that amount of coverage. *See Maryland Casualty Co. v. Smith,* 117 N.C. App. 593, 598, 452 S.E.2d 318, 321 ("Underinsured coverage is mandatory unless rejected by the insured in accordance with the provisions of [G.S.] § 20-279.21."), *disc. review denied,* 340 N.C. 114, 456 S.E.2d 316 (1995). Further, the burden of establishing an insured's rejection of coverage falls on *the insurer. See, e.g., Lichtenberger v. Insurance Co.,* 7 N.C. App. 269, 273, 172 S.E.2d 284, 287 (1970) (discussing UM coverage).

At the time of plaintiff's accident, rejection of UIM coverage was required to be "in writing . . . on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance . . . ." G.S. § 20-279.21(b)(4).

Under the foregoing principles, therefore, unless the evidence reflects an issue of material fact regarding Sovran's rejection of UIM

coverage equal to the liability limits contained within the PMA policy (by use of a form promulgated by the Rate Bureau), we must affirm the court's determination that, under the applicable version of G.S. § 20-279.21(b)(4), plaintiff (through its employer Sovran) was afforded UIM coverage in the amount of $1,000,000.00.

As of 23 October 1990, a single form had been promulgated by the Rate Bureau and approved by the Commissioner of Insurance to effectuate rejection of UIM coverage in an amount equal to a policy's bodily injury liability limits:

SELECTION/REJECTION FORM
UNINSURED MOTORISTS COVERAGE
UNINSURED/UNDERINSURED MOTORISTS COVERAGE

Uninsured Motorists Coverage and Uninsured/Underinsured Motorists Coverage have been explained to me. I understand that the option I select will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policies unless I notify you otherwise in writing.

—— I choose to reject Uninsured/Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of:

B.I. ————; P.D. ————

—— I choose to reject both Uninsured and Uninsured/ Underinsured Motorists Coverages.

PMA's arguments before this Court rely entirely upon its interpretation of the language and significance of a form executed by Sovran which PMA insists adequately expressed the latter's intention to reject liability limits UIM coverage. More specifically, Alyce R. Hurley (Hurley, Risk Insurance Manager and Vice President of Sovran) submitted the following document to PMA on Sovran's behalf on 12 April 1989:

UNINSURED MOTORISTS COVERAGE
UNINSURED/UNDERINSURED MOTORISTS COVERAGE

Uninsured Motorists Coverage and Uninsured/Underinsured Motorists Coverage have been explained to me. I understand that the option I select will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policies with this company unless I notify you otherwise in writing.

X    I Choose to reject Uninsured Motorists Coverage Limits
     equal to my automobile liability limits and select
     Uninsured Motorists Coverage at Limits of:

> X    Statutory per each state's requirement for the following
>      states:

> . . . North Carolina . . . .

A subsequent endorsement to the policy (dated 23 January 1990)
provided:

> In consideration of the premium charges in the various
> states, . . . it is agreed that the limit of liability for uninsured
> motorists will be as indicated in the schedule listed below:

| STATE | LIMIT OF LIABILITY |
|---|---|
| . . . . | |
| NORTH CAROLINA | $60,000.00 |

PMA maintains the foregoing clearly and unambiguously
expressed Sovran's "inten[tion] to reject underinsured coverage in
the amount of the policy limits as offered by PMA." We disagree.

First, it is readily apparent that the document signed by Hurley on
Sovran's behalf differs from the Rate Bureau directive in several note-
worthy respects. For example, although the title and prefatory lan-
guage of the former refer separately to the terms "uninsured" and
"underinsured," only "Uninsured" coverage is specifically rejected by
Sovran. Indeed, the sole option available to an insured by the rejec-
tion form utilized in the case *sub judice* is to "reject **Uninsured**
Motorists Coverage Limits equal to my automobile liability limits and
select **Uninsured** Motorists Coverage at Limits of: . . . Statutory per
[North Carolina's] requirement . . . ." In contrast, the Rate Bureau for-
mulation enables an insured party to "reject both Uninsured and
Uninsured/Underinsured Motorists Coverages." In addition, the rejec-
tion form herein limits an insured who rejects liability limits UM cov-
erage to selection of UM coverage *only* at limits of "[s]tatutory per
each state's requirement . . . ." The Rate Bureau form, on the other
hand, provides spaces to indicate selection of specified limits of
UM/UIM coverage *and* to reject both coverages in their entirety.

Moreover, the language of the rejection form executed by Sovran
to the effect the insured was selecting UM limits at "statutory per
[North Carolina's] requirement" is ambiguous particularly in light of

the subsequent endorsement purporting to provide $60,000.00 UM coverage. Further illustrating this ambiguity is Hurley's understanding reflected in her affidavit that Sovran was "purchas[ing] the minimum required amounts of uninsured/underinsured Motorist coverage in the state of North Carolina." As previously noted, in the absence of effective rejection of liability limits UIM coverage, the minimum required by North Carolina law under the circumstances *sub judice* would be an amount equal to the $1,000.000.00 liability coverage. In the event of proper rejection of UIM coverage, the minimum amount of UIM coverage under North Carolina law which an insured must procure is none, not $60,000.00. We therefore agree with plaintiff that the rejection form executed by Sovran and accepted by PMA is ambiguous, and thus must be construed against the insurer and in favor of coverage. *See, e.g., Hamilton v. Travelers Indemnity Co.*, 77 N.C. App. 318, 320, 335 S.E.2d 228, 230 (1985), *disc. review denied*, 315 N.C. 587, 341 S.E.2d 25 (1986).

While acknowledging the rejection form does not explicitly indicate Sovran's rejection of *UIM* coverage, PMA responds that the term *uninsured* as defined in the PMA policy includes any motor vehicle "which is an underinsured motor vehicle." Further, PMA points out that the Act includes the term "underinsured highway vehicle" in its description of "uninsured motor vehicles." *See* N.C. Gen. Stat. § 20-279.21(b)(4) (1993). Thus, PMA contends "Sovran's rejection of 'uninsured motorist coverage limits,' includes by definition, a rejection of underinsured motorist coverage, and was sufficient to accomplish rejection of both." In other words, PMA argues rejection of UIM coverage may be read into Sovran's 12 April 1989 rejection of UM coverage equal to its $1,000,000.00 liability limits.

However, UM and UIM coverages are separately referred to in both the title and introductory statement of the Rate Bureau form, and UM and UIM benefits are thus handled as two distinct types of coverage within that document itself. Construing the rejection form at issue against the insurer and in favor of coverage, therefore, we decline to endorse PMA's assertion that the concept of "underinsured" motorists coverage is incorporated within the word "uninsured" for purposes of rejecting insurance coverage under G.S. § 20-279.21(b)(4).

Finally, PMA contends uncontroverted evidence establishes that both Sovran (the insured) and PMA (the insurer) intended that UIM coverage equal to the policy's liability limits be rejected. Specifically,

PMA cites the statement in Hurley's affidavit to the effect that Sovran "intended to purchase the minimum required amounts of uninsured/underinsured Motorist Coverage in the state of North Carolina and reject uninsured/underinsured motorist coverage in the amount of liability policy limits . . . ." Further, PMA alleges that upon receipt of Sovran's rejection, PMA charged and accepted premiums reflecting only $60,000.00 UIM coverage. Because a policy of insurance constitutes a contract, PMA suggests that the intent of the parties with respect to the terms of their agreement controls interpretation thereof. *See, e.g., White v. Mote*, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) (citation omitted).

We observe first that the version of G.S. § 20-279.21(b)(4) in effect in 1990 provided that rejection of UIM coverage "*shall*" be in writing and on "a form promulgated by the Rate Bureau and approved by the Commissioner of Insurance." The language "shall" as applied in Chapter 20 of the North Carolina Motor Vehicle Statutes, is "mandatory" and not merely "formal" and "directory language." *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 254-55, 382 S.E.2d 745, 749 (1989) (dealing with liability policy cancellation notice contained in N.C. Gen. Stat. § 20-310(f)(2) (1983 & Cum. Supp. 1988)); *see also Insurance Co. v. Hayes*, 276 N.C. 620, 638-39, 174 S.E.2d 511, 522-23 (1970); *Thompson Cadillac-Oldsmobile, Inc. v. Silk Hope Automobile, Inc.*, 87 N.C. App. 467, 472-73, 361 S.E.2d 418, 421-22 (1987) (Chapter 20 requirements governing transfer of legal title and ownership of motor vehicles are mandatory), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 672 (1988). Again, as of the date of plaintiff's accident, only a single form complied with the statutory directives.

In addition, our Supreme Court has held that although an insured may reject UIM coverage in its entirety, the terms of such coverage are not controlled simply by the parties and their insurance contract. As aforementioned:

> [W]hen a statute [such as G.S. § 20-279.21(b)(4)] is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in[to] it, and if the terms of the policy conflict with the statute, the . . . statute will prevail.

*Sutton*, 325 N.C. at 263, 382 S.E.2d at 762 (citations omitted).

Thus, whatever the expressed intentions of Sovran and PMA, the rejection form executed by Sovran, because it failed to comply with

the provisions of G.S. § 20-279.21(b)(4), did not constitute a proper and effective rejection of UIM coverage equal to the policy's liability limits.

**[2]** PMA's second primary contention is that failure to utilize a rejection form *identical* to that promulgated by the Rate Bureau did not operate to invalidate Sovran's alleged rejection of UIM liability limits coverage. More particularly, PMA claims that the policy at issue did not fall within the jurisdiction of the Rate Bureau, *see* N.C. Gen. Stat. § 58-36-1 (1994), and thus use of the precise form promulgated by the Rate Bureau was not required. In the narrow circumstances before us, we disagree.

We reiterate our observations above regarding interpretation of the mandatory "shall" in Chapter 20. However, PMA seeks to avoid application of the statute in that the contract of insurance herein was a commercial automobile liability policy providing coverage for more than five vehicles. PMA suggests it is therefore categorized as a "fleet" motor vehicle policy. *See* N.C. Gen. Stat. § 58-40-10(2) (1994). Because responsibility of the Rate Bureau in the instant context extends solely to "private passenger (nonfleet) motor vehicles," *see* G.S. § 58-36-1(3), PMA insists "there is no basis upon which to require PMA or Sovran to use the specific rejection form promulgated by the Rate Bureau . . . ."

Nonetheless, it is uncontroverted that at the time of his automobile accident, plaintiff was operating a Sovran vehicle which was principally garaged and registered in North Carolina and which bore a North Carolina license plate. Under N.C. Gen. Stat. § 20-309 (1993), financial responsibility as provided in Article 9A of Chapter 20 of our General Statutes—i.e, the Financial Responsibility Act—must be maintained upon all motor vehicles registered in this State. Again, the version of G.S. § 20-279.21(b)(4) in effect at the time of plaintiff's accident clearly and unambiguously mandated that any rejection of UIM coverage "shall" be accomplished by use of a form "promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance."

Notwithstanding, PMA claims that to interpret this portion of G.S. § 20-279.21(b)(4) as applicable to the fleet policy at issue here would be tantamount to creating a conflict between that statutory section and G.S. § 58-36-1. *See, e.g., Hunt v. Reinsurance Facility,* 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981) ("statutes should be reconciled

with each other when possible . . . .) (citations omitted). We do not believe, however, that giving effect to the plain language of G.S. § 20-279.21(b)(4) indicates any pronouncement regarding the scope or extent of the Rate Bureau's jurisdiction. To the contrary, it appears that for purposes of application of the Act in the circumstances of this case, the *jurisdiction* of the Rate Bureau is largely immaterial.

By requiring rejection of UIM coverage to be accomplished by use of a specific Rate Bureau form, G.S. § 20-279.21(b)(4) was not effectively conferring additional jurisdictional authority to the Rate Bureau. Rather, the statute appears merely to have been concerned with avoiding confusion and ambiguity through the use of a single standard and approved form. Stated otherwise, we disagree with PMA's conclusion that interpreting the relevant version of G.S. § 20-279.21(b)(4) as mandating use of a Rate Bureau form for rejection of UIM coverage within a fleet policy necessarily conflicts with G.S. § 58-36-1.

PMA in any event suggests we avoid the purported statutory conflict by "limit[ing] application of the procedure for using the Rate Bureau form to companies that are otherwise subject to the Rate Bureau's jurisdiction." PMA perceives support in a more recently enacted version of G.S. § 20-279.21(b)(4). *See* N.C. Gen. Stat. § 20-279.21(b)(4) (Cum. Supp. 1992 & 1993) (rejection of UIM coverage "for policies under the jurisdiction of the North Carolina Rate Bureau" are to be in writing on an approved Rate Bureau form). PMA claims "the Legislature's amendment expresses its intent that G.S. § 20-279.21(b)(4) does not, in either its current or pre-amended form, grant jurisdiction to the Rate Bureau beyond that found in G.S. § 58-36-1."

We note that absent express mandate by the General Assembly, "amendments to statutes are not *necessarily* clarifications of legislative intent." *Proctor*, 324 N.C. at 225, 376 S.E.2d at 764. Moreover, the General Assembly explicitly provided that the 1991 amendments to G.S. § 20-279.21(b)(4) do not affect "claims arising prior to" or "litigation pending on the effective date of" the amendments, *see* 1991 N.C. Sess. Laws ch. 646, § 4, and further that they "shall only apply to new and renewal policies written on and after the effective date" of the relevant sections—5 November 1991. *Id.* As previously indicated, Sovran's PMA policy was issued in January 1990 and the accident in which plaintiff was injured occurred 23 October 1990. As plaintiff's claim thus arose prior to the applicability of the 1991 amendments,

we decline to look beyond the earlier version of G.S. § 20-279.21(b)(4).

[3] Should we determine (as we have) that the statute indeed required use of the Rate Bureau form, PMA also presents an alternative argument that the 12 April 1989 document executed by Sovran "substantially complied" with the statutory mandate and fully satisfied its underlying objectives.

More specifically, PMA alleges one of the primary purposes of the Act is to allow an insured knowingly and intentionally to reject UIM coverage. Because Hurley's affidavit establishes that UM/UIM coverage had been fully explained to her and that she had intentionally rejected PMA's offer of UM/UIM coverage equal to the policy's bodily injury liability limits, PMA contends the goal of the Act had been achieved. PMA suggests we not "elevate form over substance . . . [by] allow[ing] the procedural mechanism defined in the statute to supersede the purpose underlying that statute."

We reiterate, however, that the primary purpose of the Act is rather to assure compensation for the innocent victims of uninsured or underinsured drivers, such as plaintiff herein. *See, e.g., Proctor,* 324 N.C. at 224, 225, 376 S.E.2d at 763, 764 (citation omitted). PMA's proffered resolution (in effect denying plaintiff recovery in excess of $60,000.00) does not serve to further the "beneficial purpose" for which G.S. § 20-279.21 (1990) was enacted. *See Sutton,* 325 N.C. at 265, 382 S.E.2d at 763 (citation omitted).

As additional support for its position that "substantial compliance" with G.S. § 20-279.21(b)(4) was sufficient, PMA observes that a circular letter sent by the Rate Bureau to its member companies included the following prohibition: "the language [of the proposed form] may not be changed or substantively amended, without prior approval . . . ." PMA contends that to the extent the rejection form utilized herein modified that of the Rate Bureau, any such amendment was "nonsubstantive" and expressly permitted under the foregoing instructions.

As discussed *supra,* however, the PMA text differs from ("changes") that issued by the Rate Bureau in numerous respects. These alterations constitute substantive amendments of the sort prohibited by the Rate Bureau's instructional letter. Significantly, moreover, it is undisputed that prior approval of the changes was never sought either by PMA or by Sovran.

**RUSHER v. TOMLINSON**

[119 N.C. App. 458 (1995)]

For the reasons discussed hereinabove, we hold the policy affords $1,000,000.00 UIM coverage to plaintiff and that summary judgment was properly granted in his favor.

Affirmed.

Judges JOHNSON and GREENE concur.