HARRY VASSEUR, Plaintiff v. ST. PAUL MUTUAL INSURANCE COMPANY, Defendant

No. COA95-458

(Filed 6 August 1996)

1. **Insurance § 533 (NCI4th)— rejection of UIM coverage— requirements not met—UIM coverage provided**

  Since restriction of UIM coverage only to certain of the autos covered under a policy necessarily involves "rejection" of UIM coverage for those autos afforded liability coverage but not UIM

coverage, the "rejection" must therefore comply with the mandates of N.C.G.S. § 20-279.21(b)(4), and because plaintiff's employer executed no rejection form in accordance with the statute, and thus did not validly reject UIM coverage for "nonowned autos," plaintiff's employer's policy with defendant therefore provided $1,000,000 UIM coverage for such autos.

**Am Jur 2d, Automobile Insurance §§ 304 et seq.**

**Construction of statutory provision governing rejection or waiver of uninsured motorist coverage. 55 ALR3d 216.**

**"Excess" or "Umbrella" insurance policy as providing coverage for accidents with uninsured or underinsured motorists. 2 ALR5th 922.**

2. **Insurance § 528 (NCI4th)— motorcycle operated in course of employer's business—employee entitled to UIM coverage**

A motorcycle owned and operated by plaintiff in the course and conduct of his employer's business at the time of the collision was an "insured vehicle" under the terms of the employer's policy with defendant, and plaintiff, a class two insured, was therefore a "person insured" for "UIM purposes" and entitled to UIM coverage under the policy in the amount of $1,000,000.

**Am Jur 2d, Automobile Insurance § 315.**

**What constitutes "Automobile" for purposes of uninsured motorist provisions. 65 ALR3d 851.**

**Uninsured motorist insurance: Injuries to motorcyclist as within affirmative or exclusionary terms of automobile insurance policy. 46 ALR4th 771.**

Appeal by plaintiff from judgment entered 28 February 1995 by Judge Chase B. Sanders in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 January 1996.

*DeVore & Acton, P.A., by Fred W. DeVore, III, for plaintiff-appellant.*

*Kurdys & Lovejoy, by Scott C. Lovejoy and Jeffrey S. Bolster, for defendant-appellee.*

JOHN, Judge.

In this declaratory judgment action, plaintiff appeals the trial court's determination that plaintiff was not afforded underinsured motorist coverage by a policy of insurance issued by defendant. We reverse the trial court.

The following pertinent facts and procedural information are undisputed: At all relevant times, plaintiff was an employee of Mountain Air Cargo (Mountain Air), the named insured in a policy issued by defendant. On 19 April 1993, plaintiff's motorcycle was struck by an automobile operated by an underinsured motorist while plaintiff was delivering materials to his supervisor within the course and scope of his employment. Plaintiff was severely injured in the collision, incurring medical bills and lost earnings of approximately $300,000, and sustaining significant permanent disability.

Plaintiff exhausted the underinsured motorist's liability coverage of $100,000, and subsequently made a claim for underinsured motorist (UIM) coverage under Mountain Air's policy with defendant (the policy). Following defendant's denial of his claim, plaintiff filed the instant action seeking a declaratory judgment that he was entitled to UIM coverage under the policy.

On 28 February 1995, the trial court determined that "the defendant St. Paul Mutual Insurance Company affords no underinsured motorist coverage for the benefit of plaintiff," and directed that "judgment [be] entered in favor of defendant." Plaintiff appeals.

Plaintiff contends that because Mountain Air, the named insured within the policy, did not properly reject UIM coverage, such coverage was automatically written into the policy in the same amount as the liability limits of $1,000,000. We agree.

In determining whether insurance coverage is provided by a particular policy, careful attention must be given to (1) the type of coverage, (2) the relevant statutory provisions, and (3) the terms of the policy. *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991).

In the case *sub judice*, the type of coverage at issue is UIM, and therefore the governing statute is the version of N.C. Gen. Stat. § 20-279.21(b)(4) in effect at the time the policy was issued. *See White v. Mote*, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) ("Laws in effect

at the time of issuance of a policy of insurance become a part of the contract . . . .") Further,

> [w]hen a statute is applicable to the terms of an insurance policy, the provisions of the statute become a part of the policy, as if written into it. If the terms of the statute and the policy conflict, the statute prevails.

*Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 605, 461 S.E.2d 317, 322, *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995) (citations omitted).

It is undisputed that the applicable version of G.S. § 20-279.21(b)(4) provided as follows:

> (b)  Such owner's policy of liability insurance:
>
> . . . .
>
> (4)  Shall . . . provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) [i.e. $25,000/$50,000] of this section and that afford uninsured motorist coverage as provided by sub-division (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) as selected by the policy owner.
>
> . . . .
>
> The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the cov-erage. An insured named in the policy may select different cover-age limits as provided in this subdivision.
>
> . . . .
>
> Rejection of this coverage for policies issued after October 1, 1986, shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

G.S. § 20-279.21(b)(4) (1991).

The Financial Responsibility Act (the Act), which includes G.S. § 20-279.21(b)(4), is "a remedial statute which must be liberally con-strued in order to achieve the 'beneficial purpose intended by its

enactment.' " *Hendrickson v. Lee*, 119 N.C. App. 444, 449, 459 S.E.2d 275, 278 (1995) (citing *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989) (citation omitted)). "[P]rotection of innocent victims who may be injured by financially irresponsible motorists" has consistently been held to be the purpose of the Act, which purpose is "best served when the statute is interpreted to provide the innocent victim with the fullest possible protection." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224-25, 376 S.E.2d 761, 763-64 (1989) (citations omitted).

Turning to the policy language, *see Smith*, 328 N.C. at 142, 400 S.E.2d at 47, we note it provides $1,000,000 *liability coverage* for "Any Auto," the broadest category set out under the subheading "Covered Autos," which itself is contained within the subsection "Auto Liability Protection." "Auto" is defined in the general policy provisions, *see C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng. Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) ("[w]here a policy defines a term, that definition is to be used"), as "any land motor vehicle . . . designed for travel on public streets or roads." "Any auto," is "any owned, rented, leased or borrowed auto. It includes hired, *nonowned*, newly acquired, replacement and temporary substitute autos." (Emphasis added.) A "Nonowned Auto[]" is

> any auto that: you don't own, hire, rent, lease or borrow, and . . . used in the conduct of your business. It includes autos owned by your employees or partners or members of their households. But only while such autos are being used in the conduct of your business.

However, *UIM coverage* under the policy is restricted to "any owned auto," not specifically defined within the general policy definitions, but otherwise referred to in the policy as "any auto that you own." "You" is defined as "the named insured," which includes, *inter alia*, plaintiff's employer Mountain Air, but not plaintiff. Plaintiff argues persuasively that "[defendant] cannot limit underinsurance coverage to only 'owned autos' if its policy provides liability coverage for 'any auto' used by the insured, unless it does so pursuant to G.S. § 20-279.21(b)(4)."

In *Hendrickson*, this Court strictly enforced the requirement that UIM coverage may be rejected only " 'in writing . . . on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance,' " *Hendrickson*, 119 N.C. App. at 450, 459

VASSEUR v. ST. PAUL MUTUAL INS. CO.

[123 N.C. App. 418 (1996)]

S.E.2d at 279, in order to "assure compensation for the innocent victims of uninsured or underinsured drivers"—the primary purpose of the Act. *Id.* at 457, 459 S.E.2d at 283.

In the case *sub judice*, Mountain Air executed no rejection form promulgated by the Rate Bureau and approved by the Commissioner nor any form whatsoever. Notwithstanding, defendant insists that "[Mountain Air's] selection of 'owned autos' for purposes of UIM coverage comports with the mandates of the Financial Responsibility Act." According to defendant, G.S. § 20-279.21(b)(4) "requires that each automobile insurance policy issued in North Carolina have UIM coverage in the same *amount* found in the personal injury liability coverage," but that it contains no requirement that the "*scope*" of the policy be identical. Therefore, defendant concludes, an insurer may restrict UIM coverage only to certain automobiles covered under a policy's liability provisions without receiving the statutorily-required rejection of UIM insurance. This argument fails.

[1] Restriction of UIM coverage only to certain of the autos covered under a policy necessarily involves "rejection" of UIM coverage for those autos afforded liability coverage but not UIM coverage. This "rejection" must therefore comply with the mandates of G.S. § 20-279.21(b)(4). Mountain Air executed no rejection form in accordance with G.S. § 20-279.21(b)(4), and thus did not validly reject UIM coverage for "nonowned autos." *See Hendrickson,* 119 N.C. App. at 450, 459 S.E.2d at 279. Mountain Air's policy with defendant therefore provided $1,000,000 UIM coverage upon such autos.

[2] We next consider whether plaintiff may avail himself of this coverage. In *Smith,* 328 N.C. at 143, 400 S.E.2d at 47, our Supreme Court reiterated that under G.S. § 20-279.21(b)(3) and (b)(4), there are two classes of "persons insured:"

> (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and guest in such vehicle.

Class one insureds are covered for purposes of UIM coverage "regardless of whether the insured vehicle is involved in their injuries." However, class two insureds are " 'persons insured' only when the insured vehicle is involved in the insured's injuries." *Isenhour,* 341 N.C. at 606, 461 S.E.2d at 322 (citing *Smith,* 328 N.C. at 143, 400

S.E.2d at 47). Indeed, defendant does not dispute that plaintiff should be considered a class two insured if he was "injured while occupying a motor vehicle to which the [p]olicy applied."

As pointed out above, "auto" is defined in the policy as "any land motor vehicle . . . designed for travel on public streets or roads." Defendant makes no argument that plaintiff's motorcycle was not an "auto." The policy definition of "any autos" includes "nonowned autos," which further include "autos owned by [the named insured's] employees . . . [b]ut only while such auto are being used in the conduct of [the named insured's] business." Defendant concedes plaintiff owned the motorcycle involved in the instant collision, and further that plaintiff's vehicle was "being used in the conduct of [the named insured's] business."

Accordingly, the motorcycle owned and operated by plaintiff at the time of the collision was an "insured vehicle" under the policy. Plaintiff, a class two insured, was therefore a "person insured" for "UIM purposes," see *Smith*, 328 N.C. at 143, 400 S.E.2d at 47, and *Isenhour*, 341 N.C. at 606, 461 S.E.2d at 322, and entitled to UIM coverage under the policy in the amount of $1,000,000.

Notwithstanding, defendant maintains that *Smith*, 328 N.C. 139, 400 S.E.2d 44, and *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991), mandate a ruling to the contrary. This argument is unfounded.

The policy of insurance in *Smith* provided more extensive UIM coverage than liability coverage. *Smith*, 328 N.C. at 144-45, 400 S.E.2d at 48. Our Supreme Court emphasized that

> the very nature of liability insurance coverage is different from UM/UIM insurance coverage. The former protects covered persons from the consequences of their own negligence; the latter protects covered persons from the consequences of the negligence of others.

*Id.* at 146, 400 S.E.2d at 49. Therefore, the court concluded,

> while the statutory scheme requires the insurance company to offer UM/UIM coverages only if liability coverages exceed the minimum statutory requirement and in an *amount* equal to the limits of bodily injury liability insurance, nothing in the statute requires that the *scope* of coverage be the same.

*Id.* at 148, 400 S.E.2d at 50 (emphasis in original).

We do not quarrel with defendant's statement that "[t]he Supreme Court [in *Smith*] indicated that disparate treatment of the Liability and UIM provisions is entirely permissible and in fact comports with the distinctions found in the statutory authorization for these coverages." Defendant also properly cites *Sproles*, 329 N.C. at 610, 407 S.E.2d at 501, wherein our Supreme Court upheld an "owned autos only" policy restriction, identical to the one *sub judice*, which narrowed the scope of protection afforded by the policy's UIM coverage to class two insureds.

Nevertheless, defendant's reliance upon these cases is misplaced. Significantly, issuance of the policies in both *Smith*, 328 N.C. at 141, 400 S.E.2d at 46, and *Sproles*, 329 N.C. at 606, 407 S.E.2d at 498-99, took place at a time when earlier versions of G.S. § 20-279.21(b)(4) were in effect. These versions permitted rejection of UIM coverage, but failed to specify a particular method of rejection. (*See* G.S. § 20-279.21(b)(4) (1983) and (1985), providing merely that "[t]he coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage.")

In 1986, the statute was amended to provide, *inter alia,*

[r]ejection of this coverage for policies issued after October 1, 1986 shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.

*Maryland Casualty Co. v. Smith*, 117 N.C. App. 593, 594, 452 S.E.2d 318, 319, *disc. review denied*, 340 N.C. 114, 456 S.E.2d 316 (1995). *See also* 1985 N.C. Sess. Laws (Reg. Sess. 1986) ch. 1027. Indeed, the version of G.S. § 20-279.21(b)(4) in effect 1 August 1992, issuance date of the instant policy, specifically mandated that rejection of or selection of different limits for UIM coverage "*shall* be made in writing . . . on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance." G.S. § 20-279.21(b)(4) (1991) (emphasis added); *see also Watson v. American National Fire Insurance Co.*, 106 N.C. App. 681, 683-84, 417 S.E.2d 814, 816 (1992), *aff'd*, 333 N.C. 338, 425 S.E.2d 696 (1993) ("if the plaintiff had rejected the automatic UIM coverage, he could only have done so as stipulated in N.C.G.S. § 20-279.21(b)(4) [1991]."). As noted above, we must apply the version of G.S. § 20-279.21(b)(4) in effect at the time the policy was issued. *See White*, 270 N.C. at 555, 155 S.E.2d at 82.

Our holding should not be construed to invalidate the "disparate treatment" of liability and UIM coverage allowed by our Supreme Court in *Smith*, which "[s]ince *Smith*, . . . has made even broader statements about the extent of UIM coverage." *Nationwide Mutual Ins. Co. v. Mabe*, 115 N.C. App. 193, 205, 444 S.E.2d 664, 671 (1994), *aff'd*, 342 N.C. 482, 467 S.E.2d 34 (1996) ("an owned vehicle exclusion [applicable to first class insureds] is contrary to the terms of N.C.G.S. § 20-279.21(b)(4), whether it is judicially imposed or whether it is contained in the UIM portion of the policy."). Equally erroneous would be to view our holding as proscribing the applicability of "owned autos only" clauses to class two insureds approved by *Sproles*. Instead, we simply interpret the mandate of G.S. § 20-279.21(b)(4) to be precisely what the statutory language provides, *i.e.*, that "rejection of or selection of different coverage limits for underinsured motorist coverage . . . *shall* be *in writing*" on the *form approved by the Commissioner of Insurance. See Hendrickson*, 119 N.C. App. at 450-51, 459 S.E.2d at 279 (emphasis added); and *Watson*, 106 N.C. App. at 683-84, 417 S.E.2d at 816 (1992)

For the reasons stated above, the decision of the trial court is reversed.

Reversed.

Judges JOHNSON and SMITH concur.