GREAT AMERICAN INSURANCE CO., Plaintiff v. TRENTON FREEMAN, Defendant

No. COA07-659

(Filed 2 September 2008)

**Insurance— automobile—UIM coverage—fleet policy—valid rejection or selection required**

The trial court did not err in a declaratory judgment action by concluding that Omega Development's fleet policy with plaintiff insurance company provided underinsured motorist (UIM) coverage in the amount of $1,000,000 for defendant employee's injuries resulting from a 24 September 2004 accident because: (1) N.C.G.S. § 20-279.21(b)(4) provides that although plaintiff's fleet policy was not subject to the jurisdiction of the North Carolina Rate Bureau and was thus not required to use the Rate Bureau's approved form, plaintiff nonetheless was required to prove that Omega Development had validly rejected UIM coverage or selected alternative UIM coverage limits; and (2) the record was devoid of any evidence that Omega Development made such a rejection or selection. As a consequence, N.C.G.S. § 20-279.21(b)(4) provides that if the named insured does not reject UIM coverage and does not select different coverage limits, the amount of UIM coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. Further, defendant employee's use of his own motorcycle in Omega Development's business fell within the policy's definition of "any auto" and was a "covered auto" under the policy.

Appeal by plaintiff from order entered 2 February 2007 by Judge Ripley E. Rand in Durham County Superior Court. Heard in the Court of Appeals 28 November 2007.

*Edgar & Paul, by Patrick M. Anders, for plaintiff-appellant.*

*Kirby & Holt, L.L.P., by David F. Kirby, Isaac L. Thorp, and William B. Bystrynski, for defendant-appellee.*

GEER, Judge.

Plaintiff Great American Insurance Co. appeals from the trial court's order concluding that its motor vehicle insurance policy with Omega Development Co., LLC provided underinsured motorist ("UIM") coverage in the amount of $1,000,000.00 to defendant

Trenton Freeman, an Omega Development employee. While Great American contends that since its policy was a fleet policy, it was exempt from any statutory requirement that it obtain a rejection or selection of policy limits for UIM coverage, we read the controlling statute differently. Under N.C. Gen. Stat. § 20-279.21(b)(4) (2007),[1] Great American was not subject to the jurisdiction of the North Carolina Rate Bureau and, therefore, was not required to use the Rate Bureau approved form, but it nonetheless was required to prove that Omega Development had validly rejected UIM coverage or selected alternative UIM coverage limits. As the record is devoid of any evidence that Omega Development made such a rejection or selection, we affirm the trial court's order.

## Facts

On 24 September 2004, Freeman was an employee of Omega Development. Freeman had been assigned the use of a company-owned truck that day, but "because it was a pretty day outside," he decided to ride his motorcycle, which he personally owned and insured. An underinsured motorist ran a stop sign and struck Freeman's motorcycle, causing Freeman to sustain severe injuries that, in part, necessitated the amputation of his left leg.

Omega Development had a business automobile insurance policy issued by Great American that was in effect on 24 September 2004. Omega Development submitted its original insurance application to Great American for this policy in December 2000. The application contained a list of available coverage categories, including liability, uninsured motorist ("UM"), and UIM coverages. Next to each coverage category, there was a space for the applicant to place an "X" to indicate selection of that type of coverage. The application also provided options within each of the coverage categories to select different kinds of motor vehicles that would be "covered autos" within those categories.

In its application, Omega Development selected liability insurance coverage in the amount of $1,000,000.00 for "any 'auto' " within the list of "covered autos" options. Omega Development, how-

---

1. This provision was substantially amended by 2008 N.C. Sess. Laws ch. 124, sec. 1.1, to provide in pertinent part: "Notwithstanding the provisions of this subsection, no policy of motor vehicle liability insurance applicable solely to commercial motor vehicles as defined in G.S. 20-4.01(3D) or applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." This amendment is effective 1 January 2009 and applies to policies issued or renewed on or after that date. *Id.* sec. 12.1.

ever, failed to make any selection on the application regarding UIM coverage.

The application also contained a separate section listing various options from which Omega Development could choose regarding selection or rejection of UM or UIM coverage. There was a signature line next to each of the options, but Omega Development left all of the signature lines blank.

Great American subsequently issued a policy that provided Omega Development with liability coverage in the amount of $1,000,000.00 for "any 'auto.' " With respect to UM/UIM coverage, the policy provided $1,000,000.00 coverage, but defined "covered autos" for UM/UIM purposes as "only those autos described in Item Three of the declarations . . . ." Freeman's motorcycle was not one of the vehicles identified on the declarations page.

Great American filed a declaratory judgment action in Durham County Superior Court on 30 June 2006, seeking a declaration that its policy with Omega Development did not provide UIM coverage for Freeman's injuries resulting from the 24 September 2004 accident. Following a bench trial, the trial court entered an order on 2 February 2007 concluding that Great American bore the burden of proving that Omega Development had made a valid rejection of UIM coverage or had selected different limits for UIM coverage; that Great American had failed to satisfy this burden; and as a result, that its policy provided UIM coverage for Freeman's accident in the amount of $1,000,000.00. Great American timely appealed to this Court.

Discussion

The sole issue in this appeal is whether the policy issued by Great American to Omega Development provided UIM coverage for Freeman's accident. North Carolina's Motor Vehicle Safety and Financial Responsibility Act ("the Act"), N.C. Gen. Stat. §§ 20-279.1 to -279.39 (2007), establishes the requirements for North Carolina motor vehicle insurance liability policies, although it exempts from its coverage certain types of policies. *See* N.C. Gen. Stat. § 20-279.32 (2007) (exempting motor vehicles owned and operated by "for-hire motor carrier[s]" or by federal, state, or local governments). Although the policy issued to Omega Development is a fleet policy because it covers five or more vehicles leased or owned by Omega Development, *see* N.C. Gen. Stat. § 58-40-10(2) (2007), fleet policies do not fall within any of the exceptions to the Act. Accordingly, the terms of the Act apply to the Omega Development policy.

The Act's requirements with respect to UIM coverage are laid out in N.C. Gen. Stat. § 20-279.21(b)(4), which states in pertinent part:

> The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy.

As this Court explained in *Hendrickson v. Lee*, 119 N.C. App. 444, 450, 459 S.E.2d 275, 279 (1995) (internal citation omitted), under N.C. Gen. Stat. § 20-279.21(b)(4), "although an insured is not legally obligated to contract for UIM coverage in *any* amount, UIM coverage equal to a policy's liability limits will be assumed *unless* the insured validly rejects that amount of coverage."

Fleet policies, such as the one issued to Omega Development, are required to provide UIM coverage in accordance with N.C. Gen. Stat. § 20-279.21(b)(4). *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 324-25, 524 S.E.2d 386, 389, *aff'd in part on other grounds and disc. review improvidently allowed in part*, 353 N.C. 240, 539 S.E.2d 274 (2000). As this Court explained in *Hlasnick*, N.C. Gen. Stat. § 20-279.21(b)(4) sets the "floor" for UIM coverage that insurers must provide—necessarily including fleet policies—although the insured has the freedom to reject all UIM coverage or to select different coverage limits so long as the limits meet the statutory minimum. 136 N.C. App. at 325-26, 524 S.E.2d at 390.

For all policies not exempt from the Act, there must be a rejection of UIM coverage or a selection of alternative coverage limits to avoid the incorporation of the UIM coverage limits dictated by N.C. Gen. Stat. § 20-279.21(b)(4). *Hlasnick*, 136 N.C. App. at 326, 524 S.E.2d at 390. For policies within the jurisdiction of the North Carolina Rate Bureau, "[r]ejection of or selection of different coverage limits for underinsured motorist coverage . . . shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance." N.C. Gen. Stat. § 20-279.21(b)(4). "Only when issuing insurance policies outside the jurisdiction of the Rate Bureau may the insurer 'permissibly use[] its own form for selection or rejection of underinsured motorist coverage.'" *Erie Ins. Exch. v. Miller*, 160 N.C. App. 217, 222, 584 S.E.2d

857, 860 (2003) (quoting *Hlasnick*, 136 N.C. App. at 325, 524 S.E.2d at 389).

Because the Omega Development policy was a fleet policy, it was not subject to the Rate Bureau's jurisdiction. N.C. Gen. Stat. § 58-36-1 (2007) (limiting Rate Bureau's jurisdiction to those motor vehicle policies covering "nonfleet private passenger motor vehicles"). Therefore, as *Hlasnick* confirms, Great American could "permissibly use[] its own form for selection or rejection of underinsured motorist coverage." 136 N.C. App. at 325, 524 S.E.2d at 389.

Great American contends that because the policy is not within the Rate Bureau's jurisdiction no "selection/rejection form" or "written rejection" was required at all and, therefore, the trial court erred in concluding that Great American failed to meet its burden of proving that Omega Development selected alternative coverage for UIM coverage. While *Hlasnick* stated that N.C. Gen. Stat. § 20-279.21(b)(4) "requires that rejection be in writing only when the policy is under Rate Bureau jurisdiction," 136 N.C. App. at 325, 524 S.E.2d at 389, nothing in *Hlasnick* frees an insurer from having to prove that the insured in fact rejected or selected different UIM coverage limits.

Instead, in *Hlasnick*, this Court determined that the rejection of UIM coverage could be inferred from the form used by the insurer. *Id.*, 524 S.E.2d at 390. That form included a space that the insured could mark to select coverage, but it did not have a place for the insured to indicate rejection of UIM coverage or selection of other limits. *Id.*, 524 S.E.2d at 389. The Court concluded that since the insured did not choose to select UIM coverage, it could be inferred that the insured intended to reject coverage. *Id.*, 524 S.E.2d at 390. According to *Hlasnick*, the insurer's form met the "bare statutory requirements" for rejection. *Id.* We stressed, however, that "it would be preferable if the form contained a written provision allowing an insured unambiguously to reject such coverage . . . ." *Id.* Thus, *Hlasnick* acknowledges that there are still "statutory requirements" for proving that an insured has rejected UIM coverage.

In this case, because of the nature of the Great American application form, the inference found sufficient to prove rejection in *Hlasnick* cannot be drawn. Great American used a form that contained a provision that allowed Omega Development to unambiguously reject UIM coverage or select alternative coverage limits, but Omega Development did not do so.

The insurance application contained a section titled "UNIN-SURED AND UNDERINSURED MOTORISTS COVERAGE" with instructions to "[c]heck the appropriate box(es) below and sign where applicable." The application then provided:

> I understand and acknowledge that uninsured motorist (UM) and underinsured motorist (UIM) coverages have been explained to me. I have been offered the options of:
>
> ( ) Selecting UM and UIM limits equal to my liability limits,
>
> ( ) Selecting UM and UIM limits lower than my liability limits, or
>
> ( ) Rejecting coverage entirely.
>
> I understand that the coverage selection and limit choices indicated here will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.
>
> 1. I select UM and UIM limits indic[ated] in this app[lication]
>
> 2. I reject UM bodily injury coverage
>
> 3. I reject UIM bodily injury coverage
>
> 4. I reject UM property damage coverage
>
> 5. I reject UIM property damage coverage

Next to each of the options numbered one through five, there was a space for "applicant's signature."

In Omega Development's completed application, there were no marks indicating that any of the options had been offered to Omega Development, and the spaces for signatures next to the options being selected were all left blank. In addition, on the application's first page, where the applicant could place an "X" beside the type of coverage selected and the types of motor vehicles that would be "covered autos" for each type of coverage, Omega Development did not indicate that it was selecting UM or UIM coverage or designate the type of vehicles that would be "covered autos" for UM/UIM coverage.

Thus, in this case, the insured had the option to either select UIM coverage or reject UIM coverage, and it did neither. The insured had the option of selecting a different definition of "covered autos" than it did for its liability coverage, but it did not do so. We cannot, therefore, draw from these facts any inference that Omega Development intended to select a different type of coverage for UIM

than for liability. Such an inference on these facts would amount to mere speculation.

In the absence of the inference found in *Hlasnick*, the record in this case contains no evidence of any rejection or selection of alternative coverage limits with respect to UIM coverage, oral or written. The trial court, therefore, correctly determined that Great American failed to meet its burden of proving that Omega Development had selected different UIM coverage.

As a consequence, N.C. Gen. Stat. § 20-279.21(b)(4) applies: "If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." This Court construed § 20-279.21(b)(4) in *Vasseur v. St. Paul Mut. Ins. Co.*, 123 N.C. App. 418, 473 S.E.2d 15, *disc. review denied*, 345 N.C. 183, 479 S.E.2d 209 (1996).[2]

In *Vasseur*, the plaintiff, who was riding his own motorcycle, was struck by an underinsured vehicle while in the course and scope of his employment. The plaintiff sought UIM coverage under his employer's policy. That policy provided $1,000,000.00 in liability coverage for "any auto," which included vehicles not owned by the employer, but owned by employees and used for the employer's business. UIM coverage was, however, restricted to "any owned autos"— vehicles actually owned by the employer. Although there was no dispute that the insurer had failed to obtain the statutorily-required rejection of UIM coverage, the insurer argued—like Great American here—that "an insurer may restrict UIM coverage only to certain automobiles covered under a policy's liability provisions without receiving the statutorily-required rejection of UIM insurance." *Id.* at 423, 473 S.E.2d at 18. This Court rejected that argument, reasoning:

> Restriction of UIM coverage only to certain of the autos covered under a policy necessarily involves "rejection" of UIM coverage for those autos afforded liability coverage but not UIM coverage. This "rejection" must therefore comply with the mandates of G.S. § 20-279.21(b)(4). [The employer] executed no rejection

2. While Great American contends that *Vasseur* is inapplicable to this case because it did not involve a fleet policy, the nature of the policy—fleet or non-fleet—is relevant only in deciding what was required for there to be a valid rejection of UIM coverage or a valid selection of UIM limits different from those provided for liability coverage. Nothing in § 20-279.21(b)(4) suggests that the consequences of an invalid rejection or selection are different for fleet policies and non-fleet policies.

form in accordance with G.S. § 20-279.21(b)(4), and thus did not validly reject UIM coverage for "nonowned autos." *See Hendrickson*, 119 N.C. App. at 450, 459 S.E.2d at 279. [The employer]'s policy with defendant therefore provided $1,000,000 UIM coverage upon such autos.

*Id.*

In Omega Development's policy with Great American, the highest limit of bodily injury liability coverage for purposes of § 20-279.21(b)(4) is $1,000,000.00 for "any 'auto.' " The policy, however, provides UIM coverage to only "specifically described 'autos' " set out in the declarations, which in turn listed only vehicles owned by Omega Development. Since we have concluded that Great American failed to prove that Omega Development either rejected UIM coverage for autos that it did not own or selected a different scope of coverage for UIM, *Vasseur* compels the conclusion that the policy's liability limit of $1,000,000.00 for "any 'auto' " applies with respect to UIM coverage.

The Omega Development policy defines an "auto" as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads but does not include 'mobile equipment.' " Its definition of "any 'auto' " encompasses "nonowned 'autos,' " which includes "those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees' . . . but only while used in your business or your personal affairs." Because Freeman, an employee of Omega Development, was using his motorcycle in Omega Development's business, it falls within the policy's definition of "any 'auto' " and is a "covered auto" under Great American's policy. Accordingly, the trial court properly concluded that Omega Development's policy with Great American provide UIM coverage in the amount of $1,000,000.00 for Freeman's injuries resulting from the 24 September 2004 accident. The trial court's declaratory judgment order is, therefore, affirmed.

Affirmed.

Judges McCULLOUGH and STEELMAN concur.